SUNSET MOBILE HOME PARK,
Raymond Wright and Bella
Wright, Appellees,

v.

Gerald E. PARSONS and Rose
Parsons, Appellants.

No. 66106.

Supreme Court of Iowa.

Sept. 29, 1982.

Rehearing Denied Oct. 21, 1982.

Clemens Erdahl, Iowa City, for appellants.

John Titler, Cedar Rapids, for appellees.

SCHULTZ, Justice.

We granted discretionary review of a district court affirmance of a small claims court judgment that required the removal of the tenants in a forcible entry and detainer action pursuant to Iowa Code chapter 648. This review contains our first interpretation of the Mobile Home Parks Residential Landlord and Tenant Act, Iowa Code chapter 562B (1981). We find no mer-

it in the tenants' allegations of error and affirm.

Bella L. Wright and Raymond L. Wright operate a mobile home court known as Sunset Mobile Home Park in Hiawatha, Iowa. Gerald E. Parsons and Rose M. Parsons occupy a mobile home and are tenants of the Wrights. The Parsons are tenants under an oral lease with the Wrights for a mobile home lot. Their rent is due on the first of the month.

Testimony at trial revealed the series of events that led to this dispute between the parties. The first noteworthy event occurred on June 4, 1980, when Mr. Wright called the Hiawatha Chief of Police and requested his help in enforcing a tenant parking rule. The Parsons argued there was no violation of the mobile home park rules, but the landlords evidently disagreed. On June 5, Mr. Wright signed a sixty-day notice which stated that the Parsons tenancy was being terminated "for refusing to abide by the rules and regulations of Sunset Mobile Home Park." The notice was served on June 9. No further action, however, was taken by the Wrights with respect to that notice.

On June 10, the Parsons had a gathering on their lawn outside their mobile home with other tenants. Mr. Parsons indicated that the rules and regulations of the mobile home park were discussed.

Finally, on July 10, the Parsons were served with a sixty-day notice of termination that is the basis for the forcible entry and detainer action in the small claims court. They refused to move out on September 10 and were served with a three-day notice to quit shortly thereafter.

On appeal, the tenants assert: (1) the district court erroneously used a substantial evidence standard in reviewing the magistrate's ruling rather than a de novo review; (2) the written offer of a written rental agreement provided by the plaintiffs-landlords did not comply with section 562B.14(1) which requires landlord to offer tenants a written rental agreement; (3) chapter 562B abrogates the landlords' common-law right

to terminate a month-to-month tenancy without cause; (4) the sixty-day notice of termination required by section 562B.10(4) must be given at least sixty days before the last day of a rental period, rather than sixty days before the termination; and (5) plaintiffs-owners' termination of defendants' tenancy constituted "retaliatory action" prohibited by section 562B.32(1). Tenants have also made other claims which we reject without detailing.

The landlords claim that the rulings of the small claims and district courts were correct. The landlords also assert that the tenants have agreed, pursuant to district court order in an unrelated replevin action by a bank, to vacate their mobile home. The landlords in the last division of their brief assert that this appeal should be dismissed as the case is now moot. We are forced to summarily dispose of this mootness issue adversely to the landlords as they have provided us no record of the matters contained in their argument. Our rules provide for motions to dismiss supported by affidavits or other papers. Iowa R.App.P. 22(c).

I. *Standard of review.* The district court in its ruling on the small claims appeal made an abbreviated finding of facts as follows:

The Court having reviewed the file and heard the arguments of counsel and being fully advised in the premises finds as follows:

Substantial evidence was presented at the trial of the above referenced case on October 2, 1980, to support the ruling of the Judicial Magistrate dated October 3, 1980.

The tenants claim that the district court should have used the de novo, not substantial evidence, standard of review. The tenants also claim that the district court incorrectly construed ambiguities in the record to uphold the judgment of the magistrate. They then indicate that because no explicit findings or rulings were made by the district court on appeal, the remainder of their argument is on the errors made by the magistrate. The tenants request that we either reverse the district court based on the record from the original trial or remand for the presentation of additional evidence. We decline both requests.

 An appeal from a small claims court to a district court is governed by Iowa Code § 631.13(4) (1981). The district court conducts a de novo review on the record before the magistrate unless it finds the record inadequate for the purpose of rendering a judgment, in which case it may order additional evidence to be presented. *Ravreby v. United Airlines, Inc.,* 293 N.W.2d 260, 262 (Iowa 1980). While the language used by the district court may suggest that the district court did not use de novo review, no prejudice results. The underlying action on this appeal is a forcible entry and detainer action, which is tried as an equitable action. Iowa Code § 648.5 (1981). On discretionary review of equity cases our review is de novo. Iowa R.App.P. 4, 203. Thus, assuming, without deciding, that the tenants were denied de novo review in the district court, they have de novo review through this appellate process. This court will "review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the trial proceedings." *In re Marriage of Full,* 255 N.W.2d 153, 156 (Iowa 1977). We also note, as a sidelight, that the tenants did not file a motion for enlargement of findings and conclusions.

II. *Rental agreement.* The tenants maintain that chapter 562B creates a new statutory scheme for the regulation of mobile home space rental. They make two attacks on the landlords' contention that an oral month-to-month lease arose from the notice. First, they assert that this chapter gives the tenant a right to a term of one year, or at least sixty days. Thus, they claim that the landlords' notice for a written lease constituted an unenforceable rental agreement. Secondly, they claim that this notice with the attached rules was unconscionable. Consequently, the tenants maintain that the magistrate and the dis-

trict court erred in considering them as tenants at will and subject to removal at the whim of the landlords.

 The legal status of the tenant in possession of a mobile home lot has importance on the claims of the parties. We find it appropriate to review briefly the forms of tenancy and the requirements of a termination notice prior to the enactment of chapter 562B and the effect of chapter 562B on them. Tenancies at will or tenancies for a term are two common forms of tenancies in Iowa. The former is easily created, for "[a]ny person in the possession of real estate, with the assent of the owner, is presumed to be a tenant at will until the contrary is shown." § 562.4. This presumption is one of fact, not law, and is not conclusive; consequently, it may be shown that the tenancy was for a term. *McCarter v. Uban,* 166 N.W.2d 910, 912 (Iowa 1969). A thirty-day termination notice is required in a tenancy at will. A tenancy for a fixed period is a tenancy for a term. If there is an agreement for a termination date, the tenancy is for a term and is not a tenancy at will. *Benschoter v. Hakes,* 232 Iowa 1354, 1358, 8 N.W.2d 481, 484 (1943). An agreement for a tenancy may be written or oral and may be inferred from the situation and surrounding circumstances; if it is oral, however, it may be subject to the Statute of Frauds (Iowa Code § 622.32 (1981)). *McCarter,* 166 N.W.2d at 913. When an agreement is made setting the time for termination, "whether in writing or not, it shall cease at the time agreed upon, without notice." § 562.6.

A third type of tenancy, periodic tenancy, is a tenancy that endures for a certain period and will continue for subsequent successive like periods unless terminated by one of the parties at the end of a period. 51 C.J.S. *Landlord and Tenant* § 130(1) (1968); 49 Am.Jur.2d *Landlord and Tenant* §§ 70–73 (1970); Restatement (Second) *Property* § 1.5 (1977); *see also* Iowa Code § 562.6 (farm tenancies continue for the following year upon the same terms unless written notice is timely given). At common law a month-to-month periodic tenancy re-quired a thirty-day or a month notice to terminate prior to the end of a recurring monthly period. 51 C.J.S. *Landlord and Tenant,* §§ 149, 150(3) (1968); 5 Am.Jur. 2d *Landlord and Tenant* §§ 1207, 1209 (1970); Restatement (Second) *Property* § 1.5 (1977).

The Mobile Home Parks Residential Landlord and Tenant Act became effective on January 1, 1979. Act of June 26, 1978, ch. 1173 § 38, 1978 Iowa Acts. The avowed purpose and policy of the chapter are: "(1) To simplify, clarify and establish the law governing the rental of mobile home spaces and rights and obligations of landlord and tenant. (2) To encourage landlord and tenant to maintain and improve the quality of mobile home living." Iowa Code § 562B.2. Unless displaced by provisions of the Act, previous principles of law and equity supplement the Act. § 562B.3. Responsibility was placed on the landlord to offer a tenant an opportunity for a written lease. § 562B.14(1). Oral leases are not prohibited and were inferentially recognized by the clause "[i]f there is a written rental agreement." § 562B.14(5). Nowhere in the Act is a written lease required. Further, the term and time period for cancellation of the rental agreement are specified in section 562B.10(4), which provides: "Rental agreements shall be for a term of one year unless otherwise specified in the rental agreement. Rental agreements shall be cancelled by at least sixty days' written notice given by either party." Remedies for noncompliance with the rental agreement are provided in sections 562B.22–31, however, noncompliance is not an issue here.

 A. *Termination.* On December 8, 1978, the landlords, apparently in response to section 562B.14(1), gave a written notice to the tenants that they were prepared to offer a written rental agreement. The notice indicated that if the tenants did not want a written agreement, they were to acknowledge the offer. The landlords offered a month-to-month lease and the tenants testified that they "couldn't see any need for that."

The tenants claim that they were not given a meaningful opportunity to negotiate a lease. They further assert that the landlords should have offered a lease for the term of one year or, at the very least, for a term of sixty days. They urge that the landlords' actions resulted in an unenforceable rental agreement. We disagree for several reasons.

First, we do not interpret section 562B.10(4) to require a one-year lease. Chapter 562B was modeled after the Uniform Residential Landlord and Tenant Act approved by the National Conference of Commissioners on Uniform State Laws in August 1974. Lovell, *The Iowa Uniform Residential Landlord and Tenant Act and The Iowa Mobile Home Parks Residential Landlord and Tenant Act,* 31 Drake L.Rev. 253, 255 & n. 10 (1981–82). One of the many modifications made by the Iowa Legislature is contained in section 562B.10(4). In describing this section's deviation from the Uniform Act, one commentator states:

A number of jurisdictions require mobile home park owners to offer tenants at least a one-year lease. Others provide even greater security of tenure by limiting terminations by landlords to just cause. The Iowa Legislature considered both of these measures, but ultimately worked only a minor modification of the periodic tenancy in the mobile home space rental context. Thus, [chapter 562B] left the status quo relatively unchanged with regard to the security of tenure of tenants—they receive only modest protection.

Section 10(4) of House File 2135, as introduced, amended and passed by the House provided as follows:

Rental agreements shall be for a term of one year and shall be automatically renewed on a yearly basis unless otherwise specified in the original written or oral rental agreement or any renewal thereof or may be canceled by at least sixty days written notice given before the expiration of any such lease by either party. A sixty-day notice to cancel a rental agreement initiated by a landlord shall be for just cause.

This provision provided for a one-year lease automatically renewable and, while the lease could be cancelled upon 60 days written notice, the landlord could only cancel for just cause. Unfortunately for tenants, neither of these provisions prevailed when the legislation reached the Senate. The State Government Committee of the Senate offered amendment S–5400B to the bill which was ultimately passed by the House. This amendment struck subsection 10(4) in its entirety and inserted in its place the language in present section B.10(4). The amendment passed as proposed and H.F. 2135, as amended, was passed by the Senate. The House subsequently concurred with the Senate version of H.F. 2135.

. . . .

The legislature obviously elected to take a hesitant step toward a minimum one-year lease term, a step that will be for naught if mobile home park owners develop their own standard form lease specifying a fixed term, or even a periodic tenancy. The section is silent with regard to the renewal of tenancies, in contrast to the original text which made the one-year term automatically renewable on a yearly basis. In light of the changed text, it seems likely that a tenant who continues to reside on a mobile home space after the expiration of his term without a specific agreement will be subject to termination under the sixty days written notice procedure prescribed by the section. This change of course doubles the traditional notice requirement in the consensual holdover situation and apparently also in the periodic tenancy. It falls far short, however, of the security of tenure that seems warranted in light of the substantial expense involved in relocating a mobile home and the shortage of mobile home spaces to rent.

*Id.* at 308–10 (footnotes omitted). By its deletion from H.F. 2135 of the requirement of a one-year term, the legislature plainly intended not to require a one-year lease. Rather, the purpose of section 562B.10(4) is

merely to prescribe that "in the absence of an agreement as to the term, the term will be deemed to be for one year." *Id.* at 330 (footnote omitted).

Secondly, we do not interpret section 562B.10(4) to provide a lease for a term of sixty days. The language in this section "otherwise specified in the rental agreement" contains no reference to a specific time period, and the only reference to sixty days is confined to the minimum cancellation notice. The practical effect of this language is to guarantee sixty days occupancy; however, this is because of the required notice, rather than a specified minimum term of the lease.

With the principles of tenancy in mind, our examination of this record indicates that the parties agreed orally to a month-to-month periodic tenancy. The tenants were given the opportunity to sign a written agreement but declined that offer. Because the tenants and the landlords agreed to a month-to-month tenancy, the tenants may not claim a lease for a longer term; they may still require the sixty days notice, however.

■ The tenants also claim that the entire rental agreement is void as unconscionable. They maintain that the rules and regulations of the mobile home park are at variance with various portions of chapter 562B. We find it unnecessary to address their specific claims before disposing of this issue. We discussed and adopted the unconscionability defense in leases in *Casey v. Lupkes,* 286 N.W.2d 204, 207–08 (Iowa 1979), and will not repeat it here. Suffice it to say that "to create the relationship of landlord and tenant, it is only necessary to identify the parties, provide a definite description of the property, and include a statement of the term and the amount of rent to be paid." *McCarter,* 166 N.W.2d at 914. In the instant case, the agreement between the parties clearly identifies the Wrights as landlords and the Parsons as tenants. The description of the mobile home space is unquestioned. The amount of rent and duration of the term are also established. There is thus a valid oral lease

agreement. Even assuming portions of the mobile home rules are unconscionable, they will not invalidate an otherwise valid rental agreement. We hold that the oral lease agreement will stand, and we therefore need not consider the conscionability of the rules. Further, we also note that even if the mobile home rules were unconscionable, the conscionable provisions of the lease would nonetheless be enforceable. *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.,* 227 N.W.2d 169, 180 (Iowa 1975) (quoting with approval *Restatement (Second) of Contracts* § 234 (Student Ed., Tent. Drafts Nos. 1–7, 1973)).

■ III. *Termination notice.* The tenants claim that the sixty-day notice of termination required by section 562B.10(4) must be given at least sixty days before the last day of a rental period, rather than sixty days before the termination. It was agreed that the rental date was the first of the month and that the notice of termination was served on July 10. The notice of termination indicated that the tenancy would terminate sixty-one days after the service. The landlord accordingly served a notice to quit on September 9. However, the tenants maintain that this notice is invalid as their right of possession may only terminate on the last day of a rental period, which in this case would have been no earlier than September 30. We find no merit in this contention.

We interpret that portion of section 562B.10(4) which requires "sixty days written notice given by either party" to establish both a minimum notice period and also an optional termination date for a month-to-month periodic tenancy. We recognize that this interpretation, which allows a month-to-month periodic tenancy to terminate at a date other than the end of a recurring monthly period, is at variance with the common law rule that we set out previously. Applying rules of statutory construction, however, we conclude that the statute abrogates the common law rule.

The clear language of the statute provides only for a sixty day notice to cancel the lease and contains no provision that the

termination should fall at the end of a rental period. In interpreting a statute we may not add words of qualification or alter the plain terms of a statute. *State v. Hesford,* 242 N.W.2d 256, 258 (Iowa 1976). To adopt the tenants' position would require the lease to extend beyond both the normal termination date and beyond the required sixty day notice period. This construction would go beyond the express language of the statute, and we reject it.

Other rules of construction aid us in our determination. A review of a related statute strengthens our conclusion that the legislature did not intend that the tenancy could only terminate at the end of a rental period. *See Wonder Life Co. v. Liddy,* 207 N.W.2d 27, 32 (Iowa 1973) (in searching for legislative intent, court should consider and examine statutes in related areas). The Uniform Residential Landlord and Tenant Act was enacted concurrently with chapter 562B and provides in section 562A.34(2) that either party may terminate a month-to-month tenancy by written notice given at least "thirty days prior to the periodic rental date." It is evident that under chapter 562A the legislature intended that a month-to-month residential tenancy would terminate at the end of a monthly periodic rental date. In contrast, the legislature in enacting section 562B.10(4) had the opportunity to require the lease to terminate at the end of the lease, but chose to reject section 10.4 of H.F. 2135 which provided a sixty-day notice "before the expiration of any such lease." *Lovell, supra,* at 309. Instead, it made no reference to the periodic rental date. This apparently deliberate omission is evidence that the legislature intended that month-to-month tenancies of mobile home space may be terminated sixty days from the date notice is given.

The tenants point out that periodic rent is payable at the beginning of a term. They argue that our interpretation of section 562B.10(4) would shorten the rental period after notice was given. They urge that the tenants would be confronted with either paying the monthly rent on September 1st or else moving out. We disagree.

Periodic rent is payable at the beginning of any term and thereafter in monthly installments under the provisions of section 562B.10(3), however, this section provides that "[r]ent shall be uniformly apportionable from day to day." The provision for daily apportionment provides a simple method to determine the rent due for a fractional period. It also indicates that the legislature anticipated that tenancies could be ended at a date other than the periodic rental date. This language is consistent with and adds further weight to our previously stated interpretation of section 562B.10(4). We hold that the statute does not provide that the lease must terminate on the periodic rental date.

■ IV. *Termination.* The tenants claim that the landlords terminated the lease in retaliation for a gathering of the mobile home park tenants on or about June 10, 1980. The notice of termination, which formed the basis of the forcible entry and detainer action in this case, was served on the tenants on or about July 10, 1980. The tenants claim that the landlords' conduct violated section 562B.32 and thus the termination was defective. We disagree.

Section 562B.32(1)(c) provides in relevant part: "[A] landlord shall not retaliate . . . by bringing . . . an action for possession . . . after . . . [t]he tenant has organized or become a member of a tenants' union or similar organization." Although the tenants were served with a notice of termination on July 10, it is clear that the landlords initiated their action for possession *before* the June 10 gathering of tenants. A notice to quit was signed by Mr. Wright on June 5 and served on the tenants on June 9. The tenants were later served with a notice of termination apparently because the landlords believed their first notice was procedurally inadequate. Since the landlords began their action before June 10 it is clear that they did not act in retaliation for the meeting of the tenants.

The tenants also urge us to adopt the defense of retaliatory conduct. They ask us to hold that whenever there is evidence that a tenant's alleged violation of a rule or

other lease provisions forms any part of a landlord's motive for terminating the rental agreement, the court must require the landlord to disclose the actual reason for termination. We decline to so hold.

Tenants have been allowed to use retaliatory action by a landlord as a defense in eviction proceedings in several jurisdictions. However, this has generally been limited to specific retaliation by a landlord due to a tenant's complaints of a landlord's violation of housing statutes, participation in a lawful organization of tenants, or other exercises of first amendment rights. *McQueen v. Druker,* 438 F.2d 781, 785 (1st Cir. 1971) (exercise of first amendment rights of reporting code violation); *Edwards v. Habib,* 130 App.D.C. 126, 138, 397 F.2d 687, 699 (1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969); *Four Seas Investment Corp. v. International Hotel Tenants Assoc.,* 81 Cal.App.3d 604, 610, 146 Cal.Rptr. 531, 533–34 (1978) (the defense of retaliatory eviction extends beyond warranties of habitability and into the area of first amendment rights); *Portnoy v. Hill,* 57 Misc.2d 1097, 1098, 1100, 294 N.Y.S.2d 278, 279, 281 (1968) (retaliation for tenant's reporting of code violation is an affirmative defense); *Sims v. Century Kiest Apts.,* 567 S.W.2d 526, 527, 532 (Tex.Civ.App.1978) (tenant may bring a cause of action for termination due to retaliation by the landlord for tenant's reporting code violation to city authorities). In the instant case, the tenants made no complaint of housing code violations, nor were the tenants' first amendment rights of free speech and assembly impaired. *See generally State v. Elliston,* 159 N.W.2d 503, 507 (Iowa 1968) (constitutionally protected rights of free speech and assembly are not unlimited). Thus, even if we were to adopt the defense of retaliatory action, the disputes between the landlords and the tenants do not fall within those cases that have allowed retaliation as a defense. There is thus no need to decide whether we will apply a defense of retaliatory action.

The tenants' final claim is that chapter 562B abrogates the landlords' common-law right to terminate without cause. A review of chapter 562B reveals no basis to support the tenants' position.

Chapter 562B provides the landlords with two methods of terminating the lease. One of these two methods is provided in section 562B.25:

> [I]f there is a material noncompliance by the tenant with the rental agreement, the landlord may ... terminate upon a date not less than thirty days after receipt of the notice if the breach is not remedied in fourteen days. If there is a noncompliance by the tenant with section 562B.18 materially affecting health and safety, the landlord may ... terminate upon a date not less than thirty days after receipt of the notice if the breach is not remedied in fourteen days.

The landlords in the case at bar did not terminate pursuant to this fourteen/thirty-day termination procedure. Instead, the landlords elected to terminate pursuant to section 562B.10(4). When the legislature was considering the enactment of section 562B.10(4), it *rejected* the language "[a] sixty-day notice to cancel a rental agreement initiated by a landlord shall be for just cause." Lovell, *supra,* at 309. The only condition imposed by section 562B.10(4) is that the landlords may not cancel the lease solely for the purpose of making the tenants' mobile home space available for another mobile home. This condition was met. Thus, the landlords in this case may give sixty days notice to terminate without cause. Defendants' claims are clearly contrary to legislative intent.

Having found no prejudicial error in the small claims and district courts' rulings, we affirm.

AFFIRMED.

All Justices concur, except CARTER, J., takes no part.