HILLVIEW ASSOCIATES d/b/a Gracious Estates Mobile Home Park, Appellee,

v.

Tom BLOOMQUIST and Sandra Bloomquist, Appellants.

HILLVIEW ASSOCIATES d/b/a Gracious Estates Mobile Home Park, Appellee,

v.

Richard SWARTZ and Nellie Swartz, Appellants.

HILLVIEW ASSOCIATES d/b/a Gracious Estates Mobile Home Park, Appellee,

v.

Kimber DAVENPORT and Reva Davenport, Appellants.

HILLVIEW ASSOCIATES d/b/a Gracious Estates Mobile Home Park, Appellee,

v.

Donald RAY and Judith Ray, Appellants.

No. 88–222.

Supreme Court of Iowa.

May 17, 1989.

John C. Barrett and Griff Wodtke of Barrett & Trott, Des Moines, and Victoria L. Meade of Kuhle & Sanders, Des Moines, for appellants.

William R. Stiles of Smith, Schneider, Stiles, Mumford, Schrage & Zurek, P.C., Des Moines, for appellee.

Thomas A. Krause, Sioux City, for amicus curiae Iowa Coalition for Community Improvement.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL and ANDREASEN, JJ.

ANDREASEN, Justice.

This appeal concerns the eviction of tenants from the Gracious Estates Mobile Home Park. The affirmative defense of retaliatory eviction and other defenses raised by the tenants were rejected by the district court. On appeal we reverse the district court as to six tenants and affirm the result of the district court order as to two other tenants.

I. The underlying action on this appeal is an equitable forcible entry and detainer action. Iowa Code § 648.5 (1989). Our review of this action is de novo. We review both the facts and the law and determine, based on the credible evidence, rights anew on those propositions properly presented. *See Sunset Mobile Home Park v. Parsons*, 324 N.W.2d 452, 454 (Iowa 1982). In equity cases, especially when considering the credibility of witnesses, we give weight to the trial court's findings of fact, but we are not bound by them. Iowa R.App.P. 14(f)(7). Where the defendant raises an affirmative defense, the defendant has the burden of proving that defense by a preponderance of the evidence. In determining if the burden of proof has been established, we consider all evidence, both in support and contrary to the proposition, and then weigh each to determine which is more convincing.

II. Gracious Estates Mobile Home Park (Gracious Estates) is located in Des Moines. It is owned by Hillview Associates (Hillview), a partnership based in California. The general partner of Hillview is William Cavanaugh, a resident of California. Management of Gracious Estates has been delegated to a company known as Tandem Management Services, Inc. (Tandem), also owned by Cavanaugh and the other general partners of Hillview. Tandem employed Kathy Nitz as a regional manager, Gennie Smith as park manager and Doug Cavanaugh as property manager at Gracious Estates.

In January 1987 tenants at Gracious Estates began to meet informally to discuss their concerns over the physical condition of the trailer court and recent increases in rent. On January 28, 1987, the first meeting of a tenant's association was held in the clubhouse of Gracious Estates, and approximately 125 tenants came to the meeting. This meeting resulted in an agenda of specific concerns for the health, safety and quality of living in Gracious Estates. A volunteer leadership committee was established for the association, now known as the Gracious Estates Tenant's Association. In the course of organizing and articulating complaints, tenants contacted the Iowa Attorney General's office and their state representative.

On February 9, 1987, a meeting was held between approximately five members of the association, Ms. Nitz and the park maintenance supervisor. The tenants lodged several complaints at this meeting. This meeting lasted approximately one hour and was relatively calm. The relationship between the tenant's association and the management of Gracious Estates began to erode. The tenants were frustrated with the lack of action taken by the management of Gracious Estates.

A meeting with Ms. Nitz was scheduled for April 15, 1987. A meeting did occur on April 15 between representatives of the tenants association and Ms. Nitz. This "meeting" was held in Nitz's private office and lasted approximately five to ten minutes. The discussion quickly disintegrated into a shouting match which climaxed in a physical altercation between Nitz and one of the tenants, Kimber Davenport.

After this meeting, the management of the trailer court served ultimatums on all tenants requiring them to sign the park rules or be evicted. Management also sought out tenants not in the tenant's association in an attempt to start a rival tenants' association favorable to management. On April 22, 1987, Hillview served a thirty-day notice of termination on the following tenants: Tom and Sandra Bloomquist; Kimber and Reva Davenport; Richard and Nellie Swartz; and Donald and Judith Ray.

At least one member of each of these married couples was present at the April 15 meeting. A former secretary of Ms. Nitz testified that "they'd [management] get these now, and then the rest later. That way it wouldn't look like they were doing it because they were members of an association."

Hillview later discovered that the thirty-day notice did not provide specific grounds for termination as required by statute. On June 4, 1987, Hillview again served each of these tenants with a notice of termination which provided a sixty-day period for them to leave. At the end of the sixty-day period, the tenants remained in possession. Hillview then served three-day notices to quit. The tenants remained in the park and Hillview filed a forcible entry and detainer action.

In this summary action for forcible entry and detainer, the tenants raised the defenses of retaliatory eviction and waiver. The trial court rejected these defenses and entered an equitable decree ordering the tenants to remove their mobile homes from the park. The cases of all eight tenants were consolidated for trial and remain consolidated on appeal.

III. The Iowa Legislature adopted remedial legislation for mobile home tenants in the Mobile Home Parks Residential Landlord and Tenant Act. Iowa Code § 562B.3 (1987). The purpose of this act is to "simplify, clarify and establish the law governing the rental of mobile home spaces and rights and obligations of landlord and tenant." This law also acts to "encourage landlord and tenant to maintain and improve the quality of mobile home living." *Sunset*, 324 N.W.2d at 455. This act is recognition that the mobile home tenant is bargaining for more than simply a portion of real estate, and therefore, this act provides certain considerations unique to a mobile home rental situation. *See generally Sunset*, 324 N.W.2d 452; Lovell, *The Uniform Residential Landlord and Tenant Act and the Iowa Mobile Home Parks Residential Landlord and Tenant Act*, 31 Drake L.Rev. 253 (1981–82).

The Iowa Mobile Home Act prohibits retaliatory conduct by landlords:

1. Except as provided in this section, a landlord shall not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession or by failing to renew a rental agreement after any of the following:

(a) The tenant has complained to a governmental agency charged with responsibility for enforcement of a building or housing code of a violation applicable to the mobile home park materially affecting health and safety. For this subsection to apply, a complaint filed with a governmental body must be in good faith.

(b) The tenant has complained to the landlord of a violation under section 562B.16.

(c) The tenant has organized or become a member of a tenant's union or similar organization.

(d) For exercising any of the rights and remedies pursuant to this chapter.

2. If the landlord acts in violation of subsection 1 of this section, the tenant is entitled to the remedies provided in section 562B.24 and has a defense in an action for possession. In an action by or against the tenant, evidence of a complaint within six months prior to the alleged act of retaliation creates a presumption that the landlord's conduct was in retaliation. The presumption does not arise if the tenant made the complaint after notice of termination of the rental agreement. For the purpose of this subsection, "presumption" means that the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which would support a finding of its nonexistence.

3. Notwithstanding subsections 1 and 2 of this section, a landlord may bring an action for possession if either of the following occurs:

(a) The violation of the applicable building or housing code was caused primarily by lack of reasonable care by the tenant or other person in the household

or upon the premises with the tenant's consent.

(b) The tenant is in default of rent three days after rent is due. The maintenance of the action does not release the landlord from liability under section 562B.22, subsection 2.

Iowa Code § 562B.32 (1987). This act also provides for termination by either party without cause, so long as a sixty-day notice is provided in writing. *See* Iowa Code § 562B.10.

IV. In 1968 the United States Court of Appeals for the District of Columbia held that a landlord was not free to evict a tenant in retaliation for the tenant's report of housing code violations. As a matter of statutory construction and for reasons of public policy, such an eviction would not be permitted. *Edwards v. Habib*, 397 F.2d 687, 699 (D.C.Cir.1968), *cert. denied sub nom. Habib v. Edwards*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). However, a tenant who proves a retaliatory purpose is not entitled to remain in possession in perpetuity. If the illegal purpose is dissipated, the landlord can, in the absence of legislation or a binding contract, evict the tenant for legitimate reasons or even for no reason at all. The question of permissible or impermissible purpose is one of fact for the court or jury. *Id.* at 702.

■ In 1979 the Iowa Legislature adopted the Uniform Residential Landlord and Tenant Act and the Mobile Home Parks Residential Landlord and Tenant Act. Iowa Code chapters 562A & 562B. Both acts prohibit retaliatory conduct. *See* Iowa Code §§ 562A.36 & 562B.32. In an action by or against the tenant, evidence of a complaint within six months prior to the alleged act of retaliation creates a presumption that the landlord's conduct was in retaliation. For the purpose of the statutory subsection "presumption" means the trier of fact must find the existence of the fact presumed unless and until evidence is introduced which could support a finding of its nonexistence.

■ As a matter of statutory construction, we hold this statutory presumption imposes a burden upon the landlord to produce evidence of legitimate nonretaliatory reasons to overcome the presumption. The tenant may then be afforded a full and fair opportunity to demonstrate pretext. The burden of proof of the affirmative defense of retaliatory termination of the lease remains upon the tenant. If the landlord does not meet the burden of producing evidence of a nonretaliatory reason for termination, the statutory presumption would compel a finding of retaliatory lease termination. If the landlord does produce evidence of a nonretaliatory purpose for terminating the lease, then the fact-finder must determine from all the evidence whether a retaliatory termination has been proven by a preponderance of the evidence. Although the burden of producing evidence shifts to the landlord once the tenant has offered evidence of a complaint within six months of the notice of termination, the burden of proof remains with the tenant to establish the affirmative defense.

■ In deciding whether a tenant has established a defense of retaliatory eviction, we consider the following factors, among others, tending to show the landlord's primary motivation was not retaliatory.

(a) The landlord's decision was a reasonable exercise of business judgment;

(b) The landlord in good faith desires to dispose of the entire leased property free of all tenants;

(c) The landlord in good faith desires to make a different use of the leased property;

(d) The landlord lacks the financial ability to repair the leased property and therefore, in good faith, wishes to have it free of any tenant;

(e) The landlord was unaware of the tenant's activities which were protected by statute;

(f) The landlord did not act at the first opportunity after he learned of the tenant's conduct;

(g) The landlord's act was not discriminatory.

*Restatement (Second) of Property* § 14.8 comment f (1977).

■ V. We find the tenants have offered substantial evidence of a retaliatory

termination. They were active, vocal members of a newly-formed tenant's association. They made good faith complaints about the landlord's failure to maintain the mobile home park in a clean and safe condition. An employee of the landlord testified that certain leases were terminated because the tenants were active members of the tenants association. In response, the landlord has offered substantial evidence of a nonretaliatory reason for termination. The tenants who actively participated in the disturbance and physical abuse of Ms. Nitz during the April 15 meeting were notified of lease termination, other active members of the association were not.

According to Ms. Nitz, the tenants surrounded her desk on April 15 and implored her to call California. One of the tenants, Kimber Davenport, placed both hands in the middle of Nitz's desk, leaned over the desk, shouted that Nitz had a "truck-driver's mentality" and that she wasn't a lady. Nitz asked the tenants to leave and all but Mr. and Mrs. Rathburn refused. Ms. Nitz then left her office and, after a cooling-off period, returned and demanded that the other tenants leave the office. She again demanded that they leave and threatened to call the police if they did not. The tenants began to leave. Mr. Davenport was the last to leave, and as he left he continued the verbal abuse of Ms. Nitz and gestured to her with his finger close to her face. According to Ms. Nitz, she pushed his finger away and Davenport struck her in the face, knocking her into a doorjamb. At that point, another tenant, Don Carlson, entered the room and physically removed Davenport.

Davenport's testimony concerning the April 15 meeting was very different from Ms. Nitz's testimony. Davenport testified at the forcible entry and detainer trial that he was polite and reasonable during this meeting. Further, he claimed that he did not place his hands on Nitz's desk, shout at her, or strike her. Rather, he testified that he pushed her away with an open hand. Davenport's testimony loses credibility when it is compared with his prior testimony in a criminal case concerning this incident. In his prior testimony, Davenport admitted that he placed his hands in the middle of Ms. Nitz's desk, shouted insults at her, and struck her.

Several conclusions can fairly be drawn from the evidence. First, the April 15 meeting was initiated by members of a tenant's association in an attempt to address grievances with the management of the trailer court. This meeting disintegrated into a shouting match. The tenants were told to leave three times and they left only after a threat to call the police. We, like the trial court, conclude that Davenport did strike Ms. Nitz in the face as he left the room. He was the principal agitator, quickly leaving the topic of improvements for the park and launching into a personal attack on Ms. Nitz.

Under Iowa law, tenants may organize and join a tenant's association free from fear of retaliation. The tenants may participate in activities designed to legitimately coerce a landlord into taking action to improve living conditions. The presumption of retaliatory eviction in Iowa Code section 562B.32 protects legitimate activities of tenant unions or similar organizations.

The resolution of landlord-tenant grievances will normally involve some conflicts and friction between the parties. Arguments, even heated arguments with raised voices, cannot fairly be described as being in violation of proper conduct. There is, however, a limit to the type of conduct that will be tolerated. Kimber Davenport crossed beyond the line of legitimate behavior. Davenport has failed to establish by a preponderance of the evidence that the termination of his lease was retaliatory. The termination of the Davenports' lease was legitimate and thus cannot be said to be retaliation arising from his complaints or union activities.

■ Although the statutory presumption of retaliation has been neutralized by the evidence produced by Hillview, we find the evidence of retaliatory eviction concerning tenants Bloomquist, Swartz, and Ray, to be more convincing. Although they were present at the April 15 meeting and did participate in the arguments, they did not encourage or participate in the assault of

Ms. Nitz. The landlord's response by an attempted termination of their leases can reasonably be attributed to their active membership in the tenant's organization and in response to legitimate complaints they had made.

■ We reject Hillview's argument that there must be specific intent to retaliate on the part of Hillview's general partner before the tenants can prevail on a defense of retaliatory eviction. The evidence reveals that the local and regional managers of Gracious Estates made the decision to evict these tenants. The general partner ratified this decision without direct participation in the decision-making process.

The acts of an agent are attributable to the principal. In this situation, to require specific intent by the general partner of a multi-state real estate business would frustrate the intention of Iowa Code section 562B.32. Hillview's interpretation would allow mid-level managers to retaliate against tenant associations and seek refuge by keeping top-level directors uninformed of specific disputes with individual tenants. Tenants Bloomquist, Swartz, and Ray have established by a preponderance of the evidence their affirmative defense of retaliatory eviction. Tenants Davenport have not.

■ VI. The tenants also raised the affirmative defense of waiver based upon Iowa Code section 648.18. This section provides thirty days peaceable possession with the knowledge of the landlord after the cause of action accrues is a bar to a forcible entry or detention proceeding. There is no evidence that tenants Davenport had thirty days peaceable possession after the landlord served the sixty-day notice. The cause of action accrued at the end of the sixty days. The argument that tenant Davenport paid rent and continued in possession after the thirty-day notice of termination had been given in April would serve as a bar to a forcible entry or detainer action only if the landlord had attempted to secure possession based upon the thirty-day notice. Because the tenants raise only this statutory defense of waiver in their brief and argument, we need not consider other equitable affirmative defenses raised at trial.

VII. This is an appeal from the court's ruling and judgment in an equitable forcible entry and detainer action. We find the landlord is not entitled to an order of removal of tenants Bloomquist, Swartz and Ray because the tenants have established their affirmative defense of retaliatory termination.

We find tenant Davenport has not established the affirmative defenses of retaliatory termination or statutory waiver. The trial court ruling holding the plaintiffs were entitled to possession of Kimber and Reva Davenport's described premises is affirmed and an order for removal may issue.

We tax eighty percent of the costs of this appeal against Hillview Associates and twenty percent against Kimber and Reva Davenport.

The order and judgment of the district court is affirmed in part, reversed in part, and remanded for entry of orders and judgment and further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.