Harold (Skip) BERNET, Appellee,

v.

Sharon ROGERS, Appellant.

No. 93–654.

Supreme Court of Iowa.

July 27, 1994.

James C. Larew of the Larew Law Office, Iowa City, for appellant.

Sara Riley Brown and T. Todd Becker of the Tom Riley Law Firm, P.C., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LAVORATO, Justice.

The main issue in this appeal is whether a live-in party is a tenant at will entitling that party to a thirty-day written notice of termination of tenancy before the property owner can evict. The district court thought not, but the court of appeals disagreed. On further review we agree with the district court. We vacate the court of appeals decision and affirm the district court order of eviction.

Harold (Skip) Bernet and Sharon Rogers met in November 1985. Soon their relationship became serious. In the fall of 1986, Skip lived part-time in Sharon's Cedar Rapids' home, which Sharon also shared with her teen-age daughter. He spent the rest of his time in his home at Anamosa.

In 1987 Skip and Sharon looked at several larger homes. Eventually, Skip purchased one of these homes, a Marion acreage, for $165,000. Skip, Sharon, and Sharon's daughter moved into the house in July. Sharon did not sign a lease nor pay Skip any rent. She began renting her Cedar Rapids home to Skip's adult daughter, Connie.

Over time, Skip made about $65,000 worth of improvements to the acreage. This included interior remodeling and exterior landscaping. In addition, Skip paid all of the taxes on the acreage.

During the approximately five years that Sharon and Skip lived together, she worked part-time in a beauty shop she owned. But her primary source of income was the $280 per week Skip's construction company paid her to answer business calls. From these funds, Sharon paid (1) the long-distance phone bills, (2) for groceries, (3) for cleaning supplies, and (4) for household linens. Sharon also received $425 per month rent from Connie on Sharon's Cedar Rapids home.

In the fall of 1992, Skip left to care for his ailing mother in Anamosa. While there he called Sharon and told her that he wanted to end their relationship. Over the course of several weeks, Skip repeatedly asked Sharon to move out. She refused.

Finally, Sharon asked Skip if she could stay in the house through the Christmas season. Skip agreed.

In early January 1993, Sharon's lawyer sent Skip a registered letter. In the letter Sharon (1) asserted a property interest in the home, and (2) demanded a cash settlement.

Skip's lawyer immediately denied the viability of Sharon's claim and asked for a list of possessions that Sharon claimed were hers. Skip then told Connie to change the locks on the home after he left for a vacation. Connie did so.

Sharon reentered the house via a secret entrance she alone knew about and changed the locks again. She left a key for Skip at his business.

Skip served Sharon with a three-day notice to quit in late February. In early March he filed a forcible entry and detainer action.

Sharon raised several affirmative defenses. She asserted, among other things, that she

was a tenant at will and as such was entitled to a thirty-day written notice of termination pursuant to Iowa Code section 562A.34(2) (1993). She also asserted that Skip permitted her to remain in peaceful possession for thirty days, which constituted a bar under Iowa Code section 648.18 to an action for forcible entry and detainer.

Following a bench trial, the district court found that Sharon was simply a guest in Skip's home and not a tenant. For that reason, the court concluded, she was not entitled to a thirty-day notice of termination.

Sharon appealed and we transferred the case to the court of appeals. In reversing, the court of appeals found that Sharon was indeed a tenant at will who had been in thirty days peaceful possession when Skip filed his action. The court of appeals concluded that these facts statutorily divested the district court of jurisdiction over Skip's forcible entry and detainer action and dismissed his petition.

Skip applied to us for further review, which we granted.

■ Because a forcible entry and detainer action is tried in equity, our review is de novo. Iowa R.App.P. 4; *Hillview Assocs. v. Bloomquist,* 440 N.W.2d 867, 869 (Iowa 1989). In such a review, we look at both the facts and the law and then determine—based on the credible evidence—rights anew on those propositions properly presented. *Id.* Although we are not bound by the district court's findings of fact, we give them weight, especially when considering the credibility of witnesses. Iowa R.App.P. 14(f)(7); *Hillview,* 440 N.W.2d at 869. The defendant has the burden of proving by a preponderance of evidence any affirmative defenses the defendant raises. On review, we determine if the defendant has met that burden by considering all the evidence, both in support of and contrary to the proposition, and then weighing each to determine which is more convincing. *Id.*

■ I. Whether Sharon was a tenant at will turns on our interpretation of Iowa Code section 562.4, which provides:

A person in the possession of real estate, with the assent of the owner, is presumed

to be a tenant at will until the contrary is shown, and thirty days' notice in writing must be served upon either party or a successor of the party before termination of the tenancy.

Simply put, "a tenancy at will cannot be created without the assent, express or implied, of both parties." *Martin v. Knapp,* 57 Iowa 336, 343, 10 N.W. 721, 724 (1881). And "[p]ossession with the assent of the owner raises merely a presumption of a tenancy at will, which may be rebutted." *Id.* at 343, 10 N.W. at 724.

■ Here the district court found from the testimony of both parties that

neither [Skip] nor [Sharon] ever believed that a landlord-tenant relationship existed between them during the time they were living together in [Skip's] Marion residence. No written or oral lease was ever entered into between the parties, and no rent was ever demanded by [Skip] or paid by [Sharon]. It appears to the court that [Sharon] was simply a guest in [Skip's] home when the parties lived together in Marion and [Skip] was a guest in [Sharon's] home when the parties lived together at [Sharon's] home on Oakland Road in Cedar Rapids. The evidence establishes nothing more than an agreement to cohabitate together without marriage.

We adopt these findings which clearly establish that there was no assent, either express or implied, of *both* parties that a tenancy at will was intended.

■■ Although the district court characterized Sharon's status as a guest, we think that she was, in a legal sense, a licensee. A licensee is

a person who enters upon the property of another for his own convenience, pleasure, or benefit, only for purposes of his own and not in response to an implied invitation to the public generally to make use of the premises, but solely as a matter of permission or sufferance.

62 Am.Jur.2d *Premises Liability* § 108, at 464–65 (1990). A licensee has—with the permission of the owner—the right to use the property. *See Robert's River Rides, Inc. v. Steamboat Devel. Corp.,* 520 N.W.2d 294, 300

(Iowa 1994) (license grants permission to use land of another). The licensee, however, has no interest in the property. 49 Am.Jur.2d *Landlord and Tenant* § 5, at 45–46 (1970).

■ In contrast, a tenant has an interest in the premises and has exclusive legal possession of it. This exclusive legal possession means the tenant, and not the landlord, is in control of the premises. *Layton v. A.I. Namm & Sons*, 275 A.D. 246, ——, 89 N.Y.S.2d 72, 74–75 (1949); 49 Am.Jur.2d *Landlord and Tenant* § 6, at 47–48 (1970).

This important distinction between a licensee and tenant is made clear in *Colbert v. Ricker*, 314 Mass. 138, 49 N.E.2d 459 (1943). There, a wife allowed her husband to use her house for his personal business as a general contractor. The court determined that the husband was occupying the premises not as a tenant but as a licensee. *Id.* at 139, 49 N.E.2d at 460. The court reasoned that the wife

> was the owner and could at any time have taken exclusive possession herself. She was not bound to furnish her husband with a home, and she was not required to permit him to use her premises for his own personal business. That she allowed him to do so did not give him any interest in her property or make him a tenant. We think that he was occupying the property as a licensee.

*Id.* at 139, 49 N.E.2d at 460.

Sharon was not—as opposed to Skip—in exclusive control of the premises. Skip was. Sharon was in Skip's home solely with his permission. The fact that she lived on the premises for a number of years did not give her an interest in the property nor make her a tenant. She was merely occupying the premises as a licensee.

II. The grounds for a forcible entry and detainer action are set out in Iowa Code section 648.1. The facts here do not fit any of those grounds. Nevertheless, we think Skip used the right remedy. In similar circumstances, this court said:

> In interpreting the statute in question (forcible entry and detainer) ... we must give it a liberal construction with a view to promote its object. The object ... is to enable a person entitled to possession of real estate to obtain such possession from *any one* illegally in the possession of same.

*Rudolph v. Davis*, 239 Iowa 372, 375, 30 N.W.2d 484, 486 (1948) (citation omitted).

■ The only question in a forcible entry and detainer action is whether the defendant is wrongfully detaining possession of the real property at the time of the trial. *Id.* at 375, 30 N.W.2d at 486. This is precisely the case here. Sharon was occupying Skip's home against his wishes. In these circumstances she was nothing more than a trespasser, wrongfully detaining the property. She was holding his house hostage and, in her words, would move "when she was good and ready."

■ III. Moreover, we think Skip was not required to give Sharon a three-day notice to quit because this notice provision applies only where the defendant has had some kind of interest in the property. *See* Iowa Code §§ 648.1(2), (3), (4), (5), (6), 648.3. Because Sharon had no such interest, she was not entitled to the notice. For the same reason, we think the thirty-day peaceful possession bar does not apply. *See* Iowa Code § 648.18 ("Thirty days' peaceable possession with the knowledge of the plaintiff after the cause of action accrues is a bar to a [forcible entry and detainer] proceeding.").

■ In short, Skip was entitled to bring his action for forcible entry and detainer as soon as Skip announced his wish for Sharon to move. Thereafter, her continued presence amounted to a trespass and a wrongful detention of the property. *See Robert's River Rides, Inc.*, 520 N.W.2d at 301 (wrongful interference with possessory rights in property is trespass). In such a case it would be illogical to require either a three-day notice to quit or enforcement of the bar of section 648.18. *See Roberts v. Casey*, 36 Cal.App.2d Supp. 767, 774–75, 93 P.2d 654, 659 (1939) (applying same reasoning to forcible entry and detainer statute similar to Iowa's).

Significantly, the legislature has apparently recognized the absurdity of requiring a three-day notice to quit in cases of trespass. For example, the only case in which the

legislature has not statutorily required such a notice is where "the defendant has by force, intimidation, fraud, or stealth entered upon the prior actual possession of another in real property, and detains the same." Iowa Code § 648.1(1). Obviously, a defendant in any one of these circumstances is a trespasser.

IV. Sharon raises several other issues. We have considered them and find they lack merit.

For all of the foregoing reasons, we vacate the decision of the court of appeals and affirm the district court's order of removal.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**