# IN THE COURT OF APPEALS OF IOWA

No. 21-1564
Filed October 5, 2022

**SARAH BARKE,**
        Plaintiff-Appellant,

**vs.**

**D & D REAL ESTATE HOLDINGS, LLC,**
        Defendant-Appellee.
_____


        Appeal from the Iowa District Court for Linn County, Mary E. Chicchelly,

Judge.


        Sarah Barke appeals the district court's decision granting summary

judgment to defendant on her breach-of-contract claims.  **AFFIRMED.**


        Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines,

for appellant.

        Stephanie L. Hinz and Matthew G. Novak of Pickens, Barnes & Abernathy,

Cedar Rapids, for appellee.


        Heard by Bower, C.J., Tabor, J., and Doyle, S.J.*  Chicchelly, J., takes no

part.

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**BOWER, Chief Judge.**

Sarah Barke appeals the dismissal of her breach-of-contract claim against D & D Real Estate Holdings, LC (D&D) based on D&D's motion for summary judgment.  We find D&D's failure to renew a rental agreement does not constitute retaliatory action and Barke did not generate a jury question on her quiet enjoyment and Iowa Code section 562A.27B (2020) claims.  We affirm.

**I. Background Facts & Proceedings.**

D&D purchased the Golfview apartment complex in 2018, where Barke had been a resident since December 2014.  In April 2018, the parties entered a written lease on a month-to-month basis.[1]

Barke made several maintenance calls to D&D between April 2018 and August 2019.  Her maintenance calls related to clogs in her bathroom sink, the complex's washing machine not working, ongoing issues with her unit's air conditioning, and asking that the carpet in her unit be replaced as a reasonable accommodation for her sinus problems.  D&D addressed the clogs—though not in the manner Barke would have preferred—and the washing machine issues, and Barke resolved some of her air conditioner issues by replacing the air filter.[2]  After inspecting her carpet, D&D refused to replace it and advised her to have it

---

[1] The lease included provisions on how a tenant could give notice for lease termination, but not the landlord.  No lease term required "good cause" or a specific reason for nonrenewal by either party.

[2] In deposition testimony, D&D's operations manager testified it was the tenant's responsibility to check and replace their air conditioning unit's filters.  D&D informs tenants of their responsibility as part of the move-in process.  It is unclear if tenants in residence when D&D purchased the complex were informed, and the responsibility is not set out in the lease.

professionally steam cleaned. Barke noted the filter change and the carpet cleaning "made a huge difference."

In March 2019, Barke emailed a complaint to D&D with allegations a tenant was using illegal drugs and causing disturbances, reminding D&D she and other tenants had complained to them multiple times and had called police about the tenant. In July, Barke reported to D&D domestic violence disturbances were occurring in the apartment below Barke's. She and another tenant intervened and called the police when another incident occurred two weeks later. D&D spoke with the tenant downstairs and issued a seven-day notice of violation with a right to cure. One week later, Barke notified D&D the tenant she had reported had been glaring at her in an intimidating manner. Barke was told it would not be addressed, but if she was threatened, she should call the police.

On November 20, Barke notified D&D of continued disturbances, sanitation, and lease violations caused by the tenants in the unit below her. D&D's leasing manager replied there were two sides to each story and noted complaints had been made about Barke harassing others and knocking on tenants' doors. The leasing manager then stated, "It's clear your living situation isn't ideal for you, maybe it's time for you to find a more suitable place to live that meets your needs." On November 21, D&D issued a "Notice to not renew lease," notifying Barke her month-to-month lease would end January 31, 2020.[3]

---

[3] On January 5, several days after her last month's rent was due, Barke emailed D&D stating she was "deducting in full" her costs for air filters and carpet cleaning supplies totaling more than $500. D&D served a three-day termination notice if she did not pay in full. On January 9, Barke paid the rent owed. On January 25, she notified D&D she might not have her possessions out of her apartment by January 31 because of weather and lack of exterior maintenance at the complex.

In May 2020, Barke filed a petition against D&D, alleging breach of contract, violations of Iowa Code chapter 562A, and intentional infliction of emotional distress. Barke alleged in part:

> 9. Throughout the period of Ms. Barke's occupancy:
> a. D&D failed to ensure Ms. Barke's peaceful enjoyment of the dwelling unit;
> b. D&D ignored several well-founded reports by Ms. Barke concerning the use of illegal drugs on the premises;
> c. D&D failed to report illegal activity to law enforcement;
> d. D&D failed to evict tenants as required by the lease to ensure the peaceful enjoyment by Ms. Barke of her dwelling unit;
> e. D&D failed to make reasonable accommodations upon request by Ms. Barke.
> . . . .
> 13. D&D did not act on Ms. Barke's or other tenants' reports in the manner required by the lease and/or Iowa law.
> . . . .
> 16. D&D advised Ms. Barke that she should no longer attempt to report [neighbors' domestic violence] incidents to either law enforcement or to D&D.
> 17. Ultimately, Ms. Barke's actions and reports to ensure D&D performed its legal duties, to address domestic violence, drugs, violations of law, and lease violations, resulted in the illegal termination of Ms. Barke's tenancy.
> 18. D&D materially breached the contract by failing to perform the duties imposed upon it by the lease.
> 19. D&D materially breached the contract by terminating the lease because of Ms. Barke's attempts to exercise her legal rights under the lease and under the law of Iowa.
> 20. D&D materially breached the contract by terminating the lease without cause, in violation of the terms of the lease.
> 21. D&D's termination of the lease constitutes retaliatory conduct as defined in Iowa Code chapter 562A.
> 22. D&D acted with willful and wanton disregard for the rights and safety of Ms. Barke.

In May 2021, D&D filed a motion for summary judgment, stating "Barke received proper and timely notice of the termination of the month-to-month lease" and her claims fail as a matter of law. The district court ruled Barke could not prove the elements necessary to establish a breach-of-contract claim, nor was there

evidence of outrageous or extreme conduct to support the intentional-infliction-of-emotional-distress claim. The court granted D&D summary judgment, dismissed Barke's claims, and denied her subsequent motion to reconsider, enlarge, or amend.

Barke appeals the court's ruling as to her breach-of-contract and chapter 562A claims, but not the dismissal of her intentional-infliction-of-emotional-distress claim.

**II. Standard of Review.**

"We review grants of summary judgment for correction of errors at law." *Alta Vista Props., LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 726 (Iowa 2014). "Summary judgment is proper only when the entire record demonstrates the absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Linn v. Montgomery*, 903 N.W.2d 337, 342 (Iowa 2017).

**III. Analysis.**

Barke asserts D&D breached her right to quiet enjoyment by failing to address her complaints about her downstairs neighbors and maintenance issues, D&D interfered with her right to summon emergency assistance under Iowa Code section 562A.27B, and D&D's termination of her lease was retaliatory conduct in violation of section 562A.36.[4]

---

[4] Barke suggests we consider changes proposed in the Revised Uniform Residential Landlord and Tenant Act as part of our analysis. Our legislature has not adopted—or even introduced as legislation—the new uniform law, and we have no authority to apply unadopted legislation in place of our enacted statutes.

Barke also bases part of her arguments on municipal ordinances. But, no claim of violation of municipal ordinances was raised in the district court and,

**A. Breach of right to quiet enjoyment.** Barke contends D&D's failure to address disturbances by her downstairs neighbors or make timely repairs breached her right to quiet enjoyment of her home.

"The covenant of quiet enjoyment is a covenant and warranty by the lessor that the tenant shall have quiet and peaceful possession of the demised premises as against the lessor, any person claiming title through or under the lessor, or any person with a title superior to the lessor." *Duck Creek Tire Serv., Inc. v. Goodyear Corners, L.C.*, 796 N.W.2d 886, 895 (Iowa 2011); *accord* Iowa Code § 562A.17(7) (establishing a tenant obligation to "[a]ct in a manner that will not disturb a neighbor's peaceful enjoyment of the premises"). "Absent a lease provision to the contrary, a lease carries an implied covenant of quiet enjoyment in the property." 49 Am. Jur. 2d *Landlord & Tenant* § 469 (2022). The question we consider is, "Did the [landlord], after [tenant] took possession, do anything to disturb his possession, or interfere with his enjoyment and use of the premises?" *Boyer v. Com. Bldg. Inv. Co.*, 81 N.W. 720, 722 (Iowa 1900). All the law requires is for the landlord to do what "could reasonably be done to terminate the nuisance that the [tenant] was complaining of." *McCullough v. Houar*, 117 N.W. 1110, 1111 (Iowa 1908).

On appeal, Barke asserts D&D's giving lease-violating tenants a right to cure creates a fact issue concerning whether D&D breached her right to quiet enjoyment.[5] Iowa Code section 562A.27(1) specifically creates a tenant's right to

---

therefore, these arguments are not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

[5] The record is devoid of evidence as to the length of the complained-of tenants' lease.

cure non-compliance with a rental agreement—the landlord must provide notice to a breaching tenant and give them seven days to remedy their breaching behavior.[6] D&D's right-to-cure process with respect to the other tenants following complaints mirrors section 562A.27's requirements. Barke admitted that after D&D spoke with the downstairs tenant, "there was nothing but silence and quiet in that apartment for the months of August, September, and October." In other words, the downstairs tenant remedied their behavior upon notice, and D&D had no legal standing to terminate. D&D took the actions reasonably available to it in relation to Barke's downstairs neighbor.

As to the repairs, Barke does not allege actions taken by D&D interfered with her possession of her apartment. Her desire for different repairs than D&D made do not support a breach of quiet enjoyment.

**B. Right to summon emergency assistance.** Barke asserts D&D violated Iowa Code section 562A.27B by limiting her ability to call the police when help is needed.

Iowa Code section 562A.27B(1)(a) provides, "A landlord shall not prohibit or limit a resident's or tenant's rights to summon law enforcement assistance or other emergency assistance by or on behalf of a victim of abuse, a victim of a crime, or an individual in an emergency." The prohibited penalties include "[t]he actual or threatened assessment of penalties, fines, or fees" and "[t]he actual or

---

[6] Barke's lease ended via non-renewal rather than termination for non-compliance with the rental agreement, so section 562A.27 does not apply to her.

threatened eviction, or causing the actual or threatened eviction, from the premises."[7]  Iowa Code § 562A.27B(1)(c).

As evidence to support this claimed violation, Barke stated in her affidavit,

> 14. . . . At first, [D&D leasing agent] instructed us to call the police for any further incidents from [the] apartment [downstairs]. . . .
> 15. On July 21, 2019, the domestic violence incidents continued and I, along with neighboring tenant . . . , called the police to report the criminal activity.
> 16. . . . At 4:52 p.m., [D&D leasing agent] sent an email to me, acknowledging the voicemail and asking that I "do not call the police." . . . On July 27, 2019, I notified D&D, via email, about the intimidating or threatening behavior towards me.  At this point, I had been told not to call the police.

The email referred to in paragraph 16 more fully stated,

> I just received your phone message.  We appreciate you caring about other tenants.  We have spoken to the tenant you are concerned about.  At this time we ask that you do not call the police unless you physically see abuse happening.
> This is an apartment complex and you will hear your neighbors from time to time[.  W]e ask that you be respectful of your neighbors as well.

The email does not suggest the landlord intended to impose any penalties or other consequences should Barke summon emergency assistance.

During Barke's deposition, the parties discussed an additional email sent on July 30, where D&D stated "I understand your concerns.  We are working with

---

[7] Section 562A.27B(3) also provides remedies for a tenant:
> [I]f an owner or landlord violates the provisions of this section, a resident or tenant is entitled to recover from the owner or landlord any of the following:
> a. A civil penalty in an amount equal to one month's rent.
> b. Actual damages.
> c. Reasonable attorney fees the tenant or resident incurs in seeking enforcement of this section.
> d. Court costs.
> e. Injunctive relief.

these tenants and will continue to monitor the situation. If you personally are threatened, then you should call the police. If you witness assault, then call the police." The evidence shows Barke contacted police and emergency assistance several times relating to neighboring tenants; at no time did D&D threaten or actually impose fines, fees, penalties, or tell her she would be evicted if she contacted emergency services again. Even viewing the evidence in the light most favorable to Barke, she has not established any action by D&D infringing or limiting her right to call emergency assistance under section 562A.27B.

**C. Retaliatory conduct.** Barke asserts D&D retaliated against her due to her complaints by terminating her lease and threatening to take action for possession by filing three-day notices.

First, we address the three-day notices. The notices were statutorily-authorized responses to Barke's failure to pay her January 2020 rent in full and her stated intention to remain in possession at the end of her term. Section 562A.27(2) allows a landlord to terminate a rental agreement if a tenant fails to pay rent after a three-day curative period. Section 562A.34(4) allows a landlord to bring legal action if a tenant remains in possession after expiration of the lease. Moreover, neither notice issued until more than a month *after* D&D declined to renew her lease. Barke provides no evidence the notices were in retaliation for her complaints rather than legitimate responses to her own actions.

Iowa Code section 562A.36 prohibits retaliatory actions by a landlord against a tenant under some circumstances. "[E]vidence of a good-faith complaint within one year prior to the alleged act of retaliation creates a presumption that the landlord's conduct was in retaliation." *Id.* § 562A.36(2). The district court

determined non-renewal of a month-to-month lease does not fall within the prohibited actions under section 562A.36(1),[8] and D&D's nonrenewal of the lease was done with proper notice as required under section 562A.34(2).[9]

When interpreting statutes, our supreme court has directed, "Identical statutory language in different statutes should be given much the same meaning. Furthermore, where a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute is significant to show a different intention existed." *Farmers Coop. Co. v. DeCoster*, 528 N.W.2d 536, 539 (Iowa 1995).

In *Hillview Associates v. Bloomquist*, our supreme court noted the similarity of retaliatory conduct provisions in chapter 562A (the Uniform Residential Landlord and Tenant Act) and chapter 562B (the Mobile Home Parks Residential Landlord and Tenant Act), and that the acts were adopted in the same session and have similar language. 440 N.W.2d 867, 871 (Iowa 1989). But, while chapter 562A prohibits "increasing rent or decreasing services or by bringing or threatening to

---

[8] Section 562.36(1) provides:

> [A] landlord may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession after:
>
> a. The tenant has complained to a governmental agency charged with responsibility for enforcement of a building or housing code of a violation applicable to the premises materially affecting health and safety;
>
> b. The tenant has complained to the landlord of a violation under section 562A.15; or
>
> c. The tenant has organized or become a member of a tenants' union or similar organization.

[9] Section 562A.34(2) provides, "The landlord or the tenant may terminate a month-to-month tenancy by a written notice given to the other at least thirty days prior to the periodic rental date specified in the notice."

bring an action for possession," *see* Iowa Code § 562A.36(1), chapter 562B's retaliatory provision prohibits "increasing rent or decreasing services or by bringing or threatening to bring an action for possession or *by failing to renew a rental agreement.*" *Id.* § 562B.32(1) (emphasis added).

We presume the omission of the language "failing to renew a rental agreement" from section 562A.36(1) was intentional. D&D's failure to renew a rental agreement does not constitute retaliatory action for purposes of chapter 562A. We also find Barke did not generate a jury question on her contract or section 562A.27B claims.

The record does not establish a genuine issue of material fact exists, and D&D is entitled to judgment as a matter of law.

**AFFIRMED.**