**CAPITAL FUND 85 LIMITED PARTNERSHIP,**
Appellant,

v.

**PRIORITY SYSTEMS, LLC, Appellee.**

No. 02–1356.

Supreme Court of Iowa.

Oct. 8, 2003.

Jonathan C. Wilson, Debra Rectenbaugh Pettit, and Heather L. Palmer of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellant.

Michael D. Ensley of Hanson, Bjork & Russell, L.L.P., Des Moines, for appellee.

STREIT, Justice.

An apartment building owner complains an electronic dish is on its building's roof without permission and wants it off. The owner of the apartment complex brought a forcible entry and detainer action against its tenants' former cable television provider for installing a two-foot repeater satellite dish on the roof of one of its buildings. The district court dismissed, and the cable television provider requested an award of attorney fees. The district court refused to award the cable television provider attorney fees. Both sides appeal. Because we hold this dispute does not warrant the

summary remedy of forcible entry and detainer, we affirm.

## I. Facts and Background

In 1995, Capital Fund 85, L.P. entered into a service agreement with Provision, Inc. Under the terms of the contract, Provision agreed to provide television service to Bristol Apartments, which Capital Fund owned. To do so, Provision installed a six-foot satellite receiver dish on top of one of the buildings at Bristol Apartments. In 1997, a Provision employee attached a second dish to the receiver dish. The attached dish, a repeater, relayed the same signal across the street to another building not owned by Capital Fund.

In the district court, Capital Fund offered evidence to show that Provision asked Capital Fund on the telephone if it could install the repeater dish before it did so, but was denied permission. Priority Systems, L.L.C., an alleged assignee of Provision and the defendant in this forcible entry and detainer action, denies there is sufficient evidence to support such a claim.

Capital Fund claims it did not become aware Provision had installed the repeater dish until 2002, when Capital Fund terminated the service agreement with Priority Systems. At that time, Capital Fund contracted with another company to provide cable television. When the change in service took place, Capital Fund, no longer needing service from the six-foot receiver dish, shut off electricity to the dishes.[1] Capital Fund thereby unwittingly turned off the television service to the tenants across the street. Capital Fund later turned the power back on. The receiver and repeater dishes are presently using Capital Fund's electricity.

Capital Fund filed a petition for forcible entry and detainer against Priority Systems. Capital Fund alleged the installation of the repeater dish without its consent, as well as its continued presence upon the rooftop of the Bristol Apartments, warrants the "summary remedy" of a forcible entry and detainer action. *See* Iowa Code § 648.1 (2001). In particular, Capital Fund alleged Priority Systems has "by force, intimidation, fraud, or stealth entered upon [its] prior actual possession … in real property, and detains the same." *Id.* § 648.1(1).

After a trial, the district court dismissed Capital Fund's forcible entry and detainer petition. The court held the matter was not properly brought as a forcible entry and detainer action, because the court would be required to rule on the rights of the parties to the underlying contract; the court noted that Capital Fund had already filed a separate action in district court to resolve those very issues. In the alternative, the district court held that "[e]ven if the court found an FED action proper in this circumstance … there is no evidence in this record to support a finding of force, intimidation, fraud, or stealth."

After the district court ruled against Capital Fund on the forcible entry and detainer action, Priority Systems filed an application to tax attorney fees against Capital Fund. The court denied Priority Systems' request, ruling that there was no statutory or contractual authority on which to award attorney fees. Capital Fund appealed the district court's dismissal of the forcible entry and detainer action and Priority Systems cross-appealed the district court's refusal to award attorney fees.

## II. Scope of Review

■ Our review of a forcible entry and detainer action, which is tried in equi-

---

1. Although services were cancelled with Priority Systems, the service agreement appar-

ently allows for the placement of the receiver dish for seventeen years.

ty, is de novo. *Petty v. Faith Bible Christian Outreach Ctr.,* 584 N.W.2d 303, 306 (Iowa 1998); *Bernet v. Rogers,* 519 N.W.2d 808, 810 (Iowa 1994). Although we are not bound by the factual or legal findings of the district court, "we give them weight, especially when considering the credibility of witnesses." *Petty,* 584 N.W.2d at 306. The defendant has the burden to prove the affirmative defenses it raises. *Id.* In contrast, our review of an award of attorney fees, or lack thereof, is for an abuse of discretion. *Equity Control Assocs., Ltd., v. Root,* 638 N.W.2d 664, 670 (Iowa 2001).

## III. The Merits

### A. Forcible Entry and Detainer

The section of the statute at the center of the disagreement in this case reads as follows:

**648.1  Grounds**

A summary remedy for forcible entry or detention of real property is allowable:

(1) Where the defendant has by force, intimidation, fraud, or stealth entered upon the prior actual possession of another in real property, and detains the same....

Capital Fund bases its forcible entry and detainer claim upon this first subsection of the foregoing statute. Iowa Code § 648.1(1). Capital Fund alleges "Priority Systems and its predecessors-in-interest wrongfully entered Capital Fund's property and thereafter detained the same, by forcefully and stealthily attaching and operating a satellite repeat transmitter at Bristol Apartments."

On appeal, Capital Fund argues it has met the force, fraud, and stealth requirements of section 648.1(1), even though the disjunctive phraseology of that subsection requires a plaintiff to prove only one of

these three elements, or "intimidation." *See id.* Capital Fund argues it has established force because Provision installed the repeater dish even though it was told not to do so, and the dish continues to draw upon Capital Fund's electricity, for which Capital Fund is not paid compensation.[2] Likewise, Capital Fund claims the facts support a finding of stealth and fraud because Provision, which had the limited right to provide cable service to Capital Fund's tenants, secretly installed, and its successors-in-interest maintained, the two-foot repeater dish after Capital Fund's representative expressly told Provision not to do so. Provision put the repeater dish, Capital Fund alleges, in a place where it is not visible to the naked eye from the ground. Nor is the dish, it claims, discernible to the untrained eye standing directly in front of it as a device distinct from the six-foot receiver dish.

Before reaching these claims, the district court, recognizing "[a forcible entry and detainer action] is typically used to remove a tenant in a residential dwelling or retail establishment" questioned "whether Chapter 648 even covers the situation before the court." The court then held the matter was "not properly brought as an FED action under Chapter 648." In order to reach a decision, the district court reasoned, it would have "to determine the meaning of the contract ... when those very issues are being litigated in [another pending action]." The district court refused to do so, and dismissed Capital Fund's petition.

We agree with the district court that the present matter was not properly brought as a forcible entry and detainer action. We recognize our statute is often used to resolve landlord-tenant disputes. We do

---

**2.** Priority Systems points out that the underlying contract permits recovery for costs of electricity, on request, but Capital Fund has made no such request.

not think this, nor the fact that the court would be required to determine the meaning of a contract that is being litigated elsewhere is necessarily fatal to a forcible entry and detainer action.

■ While it is true forcible entry and detainer actions typically involve landlord-tenant disputes, the plain language of Iowa Code section 648.1(1) allows for a forcible entry and detainer action where "the defendant has by force, intimidation, fraud, or stealth entered upon the prior actual possession of another in real property, and detains the same." *Compare* Iowa Code § 648.1(1), *with* Iowa Code § 648.1(2)-(6). Although other subsections of our forcible entry and detainer statute are confined in scope to the resolution of landlord-tenant disputes, section 648.1(1) contains no such restriction.

Nor is there any language in the statute expressly forbidding application of section 648.1(1) where the court would be required to interpret a contract that is the subject of another action. It is true that determining the ancillary legal rights of the parties is not the primary object of the statute. Since our earliest days, Iowa courts have recognized that forcible entry and detainer "is . . . a civil action to obtain *possession*." *Harrow v. Baker*, 2 Greene 201, 203 (Iowa 1849) (emphasis added). And it is true that historically we were reluctant to permit parties to use this summary remedy to prove legal rights, such as title. *See, e.g., Emsley v. Bennett*, 37 Iowa 15, 17 (1873) ("the question of title or *right* of possession is not involved and cannot be tried . . . [I]t is the *fact* of possession alone that is material" (emphases in original)); *Settle v. Henson*, 1 Morris 111, 112 (Iowa 1841) ("[the action of forcible entry and detainer] is not the proper action for trying titles of any description").

■ This reluctance to try titles, however, was, in part, a function of the statutes of the time; unlike our present statute, our earliest statutes expressly forbade title from being put in issue at all. *Compare* Iowa Code § 3961 (1860), *with* Iowa Code ch. 648 (2003); *see Steele v. Northup*, 168 N.W.2d 785, 787-88 (Iowa 1969) ("chapter 648 was not passed as a primary vehicle to establish or test title," but due to repeal of a prior statutory restriction, "[w]hen title is germane . . . it may [now] be the subject of inquiry provided statutory prerequisites are met"); *see also Cummins Mgmt., L.P. v. Gilroy*, 266 Neb. 635, 667 N.W.2d 538, 542-43 (2003) (recognizing two purposes behind restriction upon trying titles: statutory restriction and summary nature of forcible entry and detainer remedy). In the absence of statutory restrictions, we have repeatedly interpreted written agreements—from leases to land contracts—in order to determine whether a defendant is in wrongful possession. *See, e.g., Petty*, 584 N.W.2d at 306-08 (interpreting a lease); *Warren v. Yocum*, 223 N.W.2d 258, 260-63 (Iowa 1974) (land contract); *Gifford v. King*, 54 Iowa 525, 529-30, 6 N.W. 735, 738 (1880) (contract); *accord Robinson v. Black*, 607 N.W.2d 676, 677-79 (Iowa 2000) (expressing willingness to examine real estate contract if part of record). We have also recognized the availability of other actions at law. *See, e.g., Petty*, 584 N.W.2d at 308; *Wernet v. Jurgensen*, 241 Iowa 833, 839, 43 N.W.2d 194, 198 (1950); *see also* Iowa Code § 648.17 (forcible entry and detainer is a nonexclusive remedy). The pendency of another action is not necessarily a bar to a forcible entry and detainer action.[3]

---

**3.** A pending prior action at law usually abates a *later* forcible entry and detainer action. *See* 36A C.J.S. *Forcible Entry and Detainer* § 29, at 993 (1961) ("The pendency of a prior action for the same cause of action between the same parties ordinarily is a ground for abate-

■ "Where ... the language of the statute is clear and plain ... the sole function of this court is to apply the statute according to its terms.... [W]e simply apply the statute, as written." *Hinders v. City of Ames*, 329 N.W.2d 654, 655 (Iowa 1983) (citations omitted). The district court, therefore, incorrectly concluded the present matter was not properly brought as a forcible entry and detainer action, because to do so would require the court to interpret a contract that is the subject of another legal action. We see no such bar in the statute.

■ Nevertheless, the district court was correct to question the applicability of chapter 648 to the facts of the present case on statutory grounds. Even if we were to accept Capital Fund's argument that Priority Systems installed the repeater dish with force, fraud or stealth, the presence of the repeater dish does not constitute a sufficient "ent[ry] upon the prior actual possession of another in real property." To hold otherwise would ignore both the history and purpose of our forcible entry and detainer statute.

"Before institution of forcible entry statutes, English common law permitted one entitled to possession of land to use any force reasonably necessary ... to regain possession from another wrongfully withholding the land." *Keller v. Southwood N. Med. Pavilion*, 959 P.2d 102, 108, n. 6 (Utah 1998) (citing Randy G. Gerchick, Comment, *No Easy Way Out: Making the Summary Eviction Process a Fairer and More Efficient Alternative to Landlord Self–Help*, 41 U.C.L.A. L.Rev. 759, 773–75 (1994)). The enactment of a forcible entry and detainer statute "obviate[d] resort to self-help and violence," providing a peaceful legal process for the bloodletting English statutes had fostered. *Lindsey v. Normet*, 405 U.S. 56, 71, 92 S.Ct. 862, 873, 31 L.Ed.2d 36, 49 (1972). Forcible entry and detainer statutes were designed "to prevent disturbances of the public peace, and to forbid any person righting himself by his own hand and violence." 36A C.J.S. *Forcible Entry and Detainer* § 3, at 962 (1961).

> Statutes providing a cause of action for forcible entry and unlawful detainer are enacted to enable the parties to obtain a speedy determination of the right to the possession of property without having to resort to violence, to preserve the peace, and require instead the use of judicial process to gain possession.

35A Am.Jur.2d *Forcible Entry and Detainer* § 7, at 1041 (2001); *see Lindsey*, 405 U.S. at 70, 92 S.Ct. at 872, 31 L.Ed.2d at 48 (the purpose of a forcible entry and detainer statute is the "prompt as well as peaceful resolution of disputes over the right to possession of real property"). In the case at hand, the receiver dish occupies a small area upon the roof of one of Capital Fund's buildings. Capital Fund does not dispute its presence on the roof. The contested two-foot repeater dish, on the other hand, occupies only a small paraboloid in space, suspended above the ground, behind the receiver dish. It does not increase the footprint of the receiver dish. Granted, the ancient legal maxim *cujus est solum, ejus est usque ad coelum* (whose is the soil, his it is up to the sky) still governs, to some extent, the space occupied by the repeater dish. Black's

---

ment of a later action of forcible or unlawful entry and detainer."); *accord Music v. DeLong*, 209 Iowa 1068, 1072, 229 N.W. 673, 675 (1930) (rejecting appellant's claim that the lower court should have "abate[d] the action on the theory that there was another action pending in the district court, similar in its nature, asking for the same relief ... [because] that proceeding had been dismissed, and was not pending"). The parties did not address this issue, however; in the present case it is unclear which action was filed first.

Law Dictionary 378 (6th ed.1990); *see* 8A Am.Jur.2d *Aviation* § 3, at 13–14 (1997) (a property owner has an interest in the airspace above his land to the extent a benefit to the land may be derived therefrom). *But see United States v. Causby,* 328 U.S. 256, 260–61, 66 S.Ct. 1062, 1065, 90 L.Ed. 1206, 1210 (1946) ("[T]hat doctrine has no place in the modern world ... Common sense revolts at the idea."). Considering the history and purpose of our forcible entry and detainer statute, as well as the nature of the statute as a summary remedy, it strains reason to characterize the installation and subsequent maintenance of the repeater dish as an "ent[ry] upon the prior actual possession of another in real property, and detains the same" as our forcible entry and detainer statute requires. The *de minimis* infringement alleged here is the otherwise unused space on the backside of a six-foot receiver dish which is occupied by a two-foot receiver dish. *Accord Keller,* 959 P.2d at 108 (stating, in dicta, Utah's "forcible entry statute only protects types of property that people can occupy" and not one's interest in a sign). There is no risk these two businesses will engage in physical struggle; only ink, as opposed to blood, is likely to be spilled.

Capital Fund does not cite any authority applying section 648.1(1) in a similar factual situation. For example, *Bernet v. Rogers,* 519 N.W.2d 808 (Iowa 1994), upon which Capital Fund relies in its brief, is an obviously dissimilar case. In *Bernet,* the defendant refused to leave her ex-boyfriend's house after he ended their relationship. Unlike a two-foot satellite repeater dish annexed to the back of a contractually installed six-foot receiver dish, in *Bernet* the defendant went so far as to change the locks on the plaintiff's entire house; in our words, "holding his house hostage," until, in her words, "she was

good and ready" to move. *Bernet,* 519 N.W.2d at 811.

Although Capital Fund may characterize the installation of the dish as an "ent[ry] upon [its] ... possession ... in real property," its true argument, as it suggested at trial and in its brief to this court, is that Priority Systems exceeded the scope of its contractual rights. The controversy is simply whether the contract allows additional equipment, not used to provide television service to the tenants of Bristol Apartments, to be attached to the dish on the roof. We therefore affirm the decision of the district court; the present matter was not properly brought as a forcible entry and detainer action. Because of our decision, we do not reach other issues raised by the parties—including, but not limited to, the issue of whether the actions of Provision and its alleged assignees constituted force, fraud, or stealth.

## B. Attorney Fees

■ Priority Systems appeals the district court's refusal to award attorney fees. We have repeatedly stated that, as a general rule in Iowa, attorney fees are not allowed in the absence of a statute or contract authorizing such an award. *Suss v. Schammel,* 375 N.W.2d 252, 256 (Iowa 1985); *Harris v. Short,* 253 Iowa 1206, 1208–10, 115 N.W.2d 865, 866 (1962). Chapter 648 does not provide for an award of attorney fees, and there is no evidence in the record that the district court abused its discretion in failing to award attorney fees on a contract between the two parties which neither it, nor we, believe ought to be litigated in this context. We affirm.

## IV. Conclusion

The district court properly held that the present matter was not properly brought as a forcible entry and detainer action. This matter does not warrant the sum-

mary remedy of chapter 648, because it would require this court to act in direct contravention to the history and purpose of the statute. Nor did the district court err in its denial of attorney fees. We affirm the decision of the district court.

**AFFIRMED.**