Ramona **CRAWLEY**, Plaintiff–Appellant,

v.

Patrick **PRICE** and Cory Tomlya-novich, Defendants–Appellees.

No.  03–2098.

Court of Appeals of Iowa.

Oct. 14, 2004.

Cynthia Rybolt, Waterloo, for appellant.

D. Raymond Walton of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellee.

Considered by SACKETT, C.J., and VOGEL and ZIMMER, JJ.

SACKETT, C.J.

Plaintiff-appellant Ramona Crawley appeals from the district court's dismissal of her petition, in which she claimed unlawful ouster and abuse of access under Iowa Code chapter 562A (1999) and made tort claims of trespass and conversion against the defendants. Crawley claims she was a tenant at will, under Iowa Code section 562.4, in a house owned in succession by the defendants, which entitled her to the protections of Iowa Code chapters 562 and 562A. She claims the defendants violated the statutory protections. Even if Crawley was not a tenant at will, she claims violation of her rights under Iowa Code chapter 648, regarding forcible entry and detention of real property. She further seeks statutory damages under Iowa Code chapter 562A for the defendants' alleged wrongful access to the property and also

claims these alleged entries by defendants were trespass. Finally, Crawley claims her property was illegally converted when it was removed from the house by one of the defendants. She seeks actual and punitive damages for the conversion.

We affirm.

## I. BACKGROUND FACTS AND PROCEEDINGS.

This case involves the purported rental of a house and an alleged wrongful ouster. Ramona Crawley filed a petition claiming she was illegally evicted. Specifically she claimed (1) unlawful ouster, (2) abuse of access, (3) trespass, and (4) conversion by the defendants. The district court found for the defendants on all claims and dismissed Crawley's petition. The district court held that Crawley had no cause of action against the defendants, the actual titleholders of the property, because she had no rental relationship with them.

The house in question came to be owned by Cory Tomlyanovich, the co-defendant-appellee, after she inherited it in 1995 from her mother. The property had apparently been used as a rental property for a period prior to Tomlyanovich's ownership. Not long after she inherited the house, Tomlyanovich sold it on contract to Len Sbiral. Sbiral defaulted on the contract, the contract was forfeited in late 1999 or early 2000, and Tomlyanovich regained the title. Prior to the forfeiture Sbiral talked to Tomlyanovich about the possibility of giving another party, Cory Bradley (a male), an interest in the property. There is no evidence showing Cory Bradley ever obtained any interest in the property.

Subsequent to the forfeiture, Tomlyanovich, apparently along with her friend Patrick Price—the other co-defendant-appellee, made an inspection of the property and found that Luvinia Stokes was renting

it. Tomlyanovich continued to rent to Stokes for a period and then allowed Stokes to live there rent-free for approximately nine months. It is not clear when Stokes moved out of the house, but Crawley moved in right after Stokes. Crawley presented some documentation that she was living in the house in December 2000 and testified that she lived in the house as early as Thanksgiving 2000.

Some time in January of 2001 Tomlyanovich and Price began discussing Price buying the house. Tomlyanovich informed Price that she thought someone was living in the house, so Price made an inspection and found Ramona Crawley, her children, and a roommate living in the house. At that time Crawley told Price she was renting the house from Cory Bradley (a female). Price notified her that Cory Bradley did not own the house and that Tomlyanovich was the actual owner of the house. Crawley asserted that after Price's visit she began to pay weekly rent to Price. Price testified he never collected rent from Crawley. The district court found no rent was paid to Price. However, the district court did find that Crawley and her roommate paid substantial rent to someone claiming to be Cory Bradley (a female who appears to fit the description of the wife of the male Cory Bradley), but that the person claiming to be Bradley was not the true owner and was not operating as an agent of Tomlyanovich or Price.

Crawley was apparently allowed to continue to reside in the home without disturbance after Price's January visit. Then in mid-February Crawley lodged a complaint with the fire marshal. The fire marshal made an inspection on February 16, 2001 and found sanitary, electrical, fire warning, and structural violations of the housing code. The fire marshal sent a letter, dated February 23, to Tomlyanovich requiring

that a smoke detector be installed within forty-eight hours of the notice and that the other items be corrected within twenty days of the notice. The fire marshal also referred the property to the city's chief electrical inspector, who inspected the house and then sent a certified letter to Tomlyanovich, dated February 20, stating that the condition of the house constituted a fire hazard and electrical shock hazard. The inspector ordered correction by February 23, or electrical power would be turned off at the house. Notice was also posted at the house.

Price admitted that he visited and entered the house a couple of times after discovering Crawley was living in the house, and he had seen the issues that were of concern to the fire marshal and electrical inspector. However, Price stated he never received notice from the city about the conditions. The notices were mailed to Tomlyanovich. Correction was not made and the electrical power was turned off on February 23. Crawley, her children, and roommate were forced to vacate the premises but testified that they did not have the ability to move their possessions out of the house at the time. About this time, Crawley was picked up on an outstanding warrant and went to jail for several weeks. After getting out of jail, Crawley returned to the house to find the locks changed and all the possessions she left in the house were gone.

Price finalized the purchase of the house from Tomlyanovich on March 1, 2001. Price admits he entered the house after that time, found no one was living in the house, and found the utilities had been turned off. He spoke to the utility companies and learned that they would not turn the utilities back on because the notices issued by the city had not been corrected. Price admitted that in March or April he loaded all of the items left in the house

into a truck and took them to the dump. Price also admitted he knew Crawley was in jail at the time, having read it in the newspaper. He stated he felt he had no reason to contact Crawley before removing the items because he owned the property and Crawley did not rent the property from him.

On September 16, 2002 Crawley filed a petition with the district court, claiming unlawful ouster in violation of Iowa Code section 562A.26, abuse of access in violation of section 562A.19, trespass, and conversion. A trial to the court was held and the district court found Crawley rented the house from Cory Bradley, who had no actual connection to the property and that neither Tomlyanovich nor Price collected any rent from Crawley. The district court held that, because Crawley rented the house from a non-owner with no connection to the actual owners, Crawley had no cause of action against the defendants, and thus dismissed the petition. On December 17, 2003 Crawley filed a notice of appeal from each and every adverse ruling of the district court.

## II. SCOPE OF REVIEW.

■ Our scope of review is determined by the nature of the trial proceedings. *Meyers v. Delaney,* 529 N.W.2d 288, 289 (Iowa 1995). This case was tried to the district court as a law action. Therefore, our review is limited to correction of legal error. Iowa R.App. P. 6.4. The trial court's findings of fact carry the force of a special verdict and are binding on us if supported by substantial evidence. *Meyers,* 529 N.W.2d at 289–90. Evidence viewed for its substantiality is to be viewed in the light most favorable to the judgment. *Falczynski v. Amoco Oil Co.,* 533 N.W.2d 226, 230 (Iowa 1995). We are not bound, however, by the trial court's application of legal principles or its conclusions

of law. *Id.* "When the trial court has applied erroneous rules of law which materially affected its decision, we will reverse." *Id.*

## III. ANALYSIS.

### A. Preservation of Error.

■ The issues to be reviewed "must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002). Error was preserved in the present case as to all issues presented on appeal. Crawley raised issues of unlawful ouster, abuse of access, trespass, and conversion in her petition to the district court. The district court found Crawley had no cause of action and dismissed the entirety of her petition.

### B. Unlawful Ouster.

■■ Crawley first argues that a tenancy at will was created because the defendants allowed her to remain in the house after discovering her presence. Iowa Code section 562.4 provides that a tenancy at will is presumed where a person is in *possession* of real estate with the *assent* of the owner. Thus, the two necessary elements for a tenancy at will are (1) possession by the supposed tenant; and (2) assent by the actual owner. We do not reach the issue of possession because we find that the assent between the owner and the supposed tenant, required by section 562.4, did not exist between Crawley and either Tomlyanovich or Price. "Simply put, 'a tenancy at will cannot be created without the assent, express or implied, of both parties.'" *Bernet v. Rogers,* 519 N.W.2d 808, 810 (Iowa 1994) (citing *Martin v. Knapp,* 57 Iowa 336, 343, 10 N.W. 721, 724 (1881)). Assent is not defined by statute, but the dictionary definition provides that assent is "[a]greement, approval, or permission; esp., verbal or nonverbal

conduct reasonably interpreted as willingness." Black's Law Dictionary 124 (8th ed. 2004). In the present case it was not legal error for the trial court to decide that Crawley did not have a tenancy at will in the property due to lack of mutual assent between Crawley and either of the defendants. There is substantial evidence in the record to support the trial court finding that there was no assent, and thus no landlord-tenant relationship between the parties. Since Crawley was not a tenant, she has no right to the notice protections of chapters 562 and 562A. On this issue, we affirm.

█ Further, since Crawley was not a tenant we find no merit in the claim that Crawley is entitled to statutory damages, as provided by chapter 562A. We also find no merit in the claims that it was abuse of access and trespass for Price to enter the property, as Crawley had no tenancy in the property.

█ Crawley next argues that, even if there was no tenancy, a cause of action against the defendants exists through the forcible entry and detainer statute, Iowa Code chapter 648. The intent of the forcible entry and detainer statute is to prevent people from resorting to self-help and violence and, instead, provide legal process for regaining possession of real property. *Capital Fund 85 Ltd. P'ship v. Priority Sys., LLC.*, 670 N.W.2d 154, 159 (2003) (citing *Lindsey v. Normet*, 405 U.S. 56, 71, 92 S.Ct. 862, 873, 31 L.Ed.2d 36, 49 (1972)). "Statutes providing a cause of action for forcible entry and detainer are enacted to enable parties to obtain speedy determination of the right to the possession of property without having to resort to violence, to preserve the peace, and require the use of judicial process to gain possession." *Id.* (quoting 35A Am. Jur. 2d *Forcible Entry and Detainer* § 7, at 1041 (2001)).

█ Nevertheless, the forcible entry and detainer law, unlike landlord-tenant law, does not provide a cause of action to a party who claims to have been wrongfully ousted in contravention of the statutory procedures. However, the Restatement (Second) of Torts addresses the issue, providing that using force for the purpose of gaining entry upon land is not privileged unless certain conditions are met. Restatement (Second) of Torts §§ 88–94, at 160–69 (1965). Furthermore, the Restatement explicitly addresses the use of force *after regaining possession peaceably.* *Id.* § 97, at 171. The provision states: "An actor who *without tortious* conduct has regained possession of land of which he was dispossessed by another is privileged to use reasonable force to exclude or expel the other as if there had been no dispossession." *Id.* (emphasis added). Price did regain possession of the property without resort to tortious conduct. The district court found, and it is supported by substantial evidence, that all occupants were absent from the property by order of the city at the time Price regained possession. Furthermore, we agree with the district court that Crawley had no tenancy, so it was not a tortious trespass for Price to enter and retake possession. Thus, Price's changing the house locks was the privileged use of reasonable force to exclude or expel. We affirm the district court's holding that Crawley had no cause of action for unlawful ouster.

## C. Removal of Crawley's Personal Property.

█ Next, we must determine whether the district court erred in dismissing Crawley's cause of action for conversion. The district court did err in its assertion that Crawley could not maintain a cause of action for conversion because

she had no rental relationship with appellees. Such a relationship is not a prerequisite to conversion. Conversion is simply "the wrongful control or dominion over another's property contrary to that person's possessory right to the property. The wrongful control must amount to a serious interference with the other person's right to control the property." *Condon Auto Sales & Service, Inc. v. Crick*, 604 N.W.2d 587, 594 (Iowa 2000). Crawley made out a prima facie case for conversion. It is uncontroverted that Price removed Crawley's property from the house and permanently disposed of it.

However, our inquiry does not end there. The Restatement (Second) offers:

> [O]ne is privileged to commit an act which would otherwise be a trespass to chattel or a conversion if the act is, or is reasonably believed to be, necessary to protect the actor's land ... or his possession of [land], and the harm inflicted [to the chattel] is not unreasonable as compared with the harm threatened [to the actor].

Restatement (Second) of Torts § 260, at 490 (1965). Thus, it may have been appropriate for Price to remove Crawley's personal property, but the removal must have been *reasonable*, based on the harm inflicted to Crawley's personal property weighed against the harm threatened to Price by the presence of Crawley's personal property on his premises. The Restatement points out that there may be instances where it is appropriate for an actor to intermeddle with another's personal property, but it may be unreasonable for the actor to completely dispossess another of property because that is a much more serious invasion. *Id.* cmt. c, at 491. That determination must be made based on the totality of circumstances. *Id.*

■ The district court gave consideration to conflicting testimony regarding the value of the property left in the house. The district court concluded that Price would not have thrown away anything of value. We find substantial evidence in the record to support this finding. We conclude it was reasonable for Price to dispose of valueless property found in the house. Thus, Price's conduct was privileged and did not constitute conversion.

■ Crawley also argues that punitive damages should be assessed against Price. To award punitive damages the evidence must be clear, convincing, and satisfactory. *See* Iowa Code § 668A.1(1)(a).

> There must also be evidence of willful or wanton disregard for the rights of another.
>
> Punitive damages are justified when the acts of the defendant are malicious. The malice may be actual (expressed) ... or it may be legal (implied), as where the defendant acts illegally or improperly with reckless disregard for another's rights.

*Condon Auto Sales & Service*, 604 N.W.2d at 594 (internal quotation marks and citations omitted). We determine Price did not act with the requisite malice for punitive damages to be awarded. Crawley did not provide clear, convincing, and satisfactory evidence to demonstrate the presence of malice. The trial court found that Price's intent was to remove valueless property found in the house he had just purchased, a house where there was no known rental agreement. These findings are supported by substantial evidence and show that Price did not act in reckless disregard for Crawley's rights. Thus, he did not act with malice, making this case inappropriate for punitive damages.

■ Finally, Crawley argues that Price's taking possession of her property created a constructive bailment, and that,

rather than fulfilling his responsibilities under the bailment, Price wrongfully converted Crawley's personal property. We do not find that such a bailment was created. We find that because Price regained possession peaceably, he was privileged to use force, in this case to change the locks to exclude or expel others. Then after regaining possession, Price was also privileged to use reasonable force in removing Crawley's personal property from the house. We find no merit in Crawley's claim that a bailment was created.

**AFFIRMED.**