**Jeffrey T. BROWN and Cheryl R. Brown, Plaintiffs,**

v.

**STATE CENTRAL BANK, Defendant.**

**No. 3:05–cv–00023–RAW.**

United States District Court, S.D. Iowa, Davenport Division.

Sept. 13, 2006.

Robert A. Wright, Jr., Wright & Wright, Des Moines, IA, for Plaintiffs.

Thomas P. Peffer, Diane Kutzko, Shuttleworth & Ingersoll, Cedar Rapids, IA, for Defendant.

RULING ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT and DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WALTERS, United States Magistrate Judge.

The above resisted cross-motions [14, 25] are before the Court following hearing.

Plaintiffs Jeffrey T. Brown and Cheryl R. Brown filed a complaint on March 7, 2005, raising multiple state law claims arising out of a loan from defendant State Central Bank ("the bank") and the circumstances of the bank's eviction of them from real property the Browns contend they had possessed as tenants at will of the bank. Specifically, the Browns sue for breach of contract (Count I), trespass (Count II), wrongful eviction (Count III), conversion (Count IV), breach of the covenant of good faith and fair dealing (Count V), interference with contractual relations (Count VI), intentional infliction of severe emotional distress (Count VII), and economic duress (Count VIII). Defendant has denied the claims. The parties have filed cross-motions for summary judgment with respect to Count III, wrongful eviction.

The Court has diversity jurisdiction. 28 U.S.C. § 1332. The case was referred to the undersigned for all further proceedings on August 26, 2005 pursuant to 28 U.S.C. § 636(c).

## I.

## SUMMARY JUDGMENT

A party is entitled to summary judgment if the affidavits, pleadings, and discovery materials show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Allsup, Inc. v. Advantage 2000 Consultants, Inc.*, 428 F.3d 1135, 1138 (8th Cir.2005); *Lund v. Hennepin County*, 427 F.3d 1123, 1125 (8th Cir.2005); *Grabovac v. Allstate Ins. Co.*, 426 F.3d 951, 955 (8th Cir.2005); *Erenberg v. Methodist Hospital*, 357 F.3d 787, 791 (8th Cir.2004); Fed.R.Civ.P. 56(c); *see Baucom v. Holiday Companies*, 428 F.3d 764, 766 (8th Cir.2005). The Court must view the facts in the light most favorable to the non-moving party, and give that party the benefit of all reasonable inferences which can

be drawn from them, "that is, those inferences which may be drawn without resorting to speculation." *Mathes v. Furniture Brands Int'l, Inc.*, 266 F.3d 884, 885–86 (8th Cir.2001) (citing *Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir.2001)); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Howard v. Columbia Public Schl. Dist.*, 363 F.3d 797, 800 (8th Cir.2004)("unreasonable inferences or sheer speculation" not accepted as fact); *Erenberg*, 357 F.3d at 791. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348 (1986)). A genuine issue of fact is material if it "might affect the outcome of the suit under governing law." *Hartnagel*, 953 F.2d at 395 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see Hitt v. Harsco Corp.*, 356 F.3d 920, 923 (8th Cir.2004); *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999); *cf. Johnson v. University of Iowa, St. Bd. of Regents*, 431 F.3d 325, 328 (8th Cir.2005)("Summary judgment is still appropriate ... when the disputed facts will not affect the outcome of the suit"); *Baucom*, 428 F.3d at 766 ("There is no genuine issue of material fact if the evidence is such that a reasonable jury could not return a verdict for [plaintiff]").

## II.

## FACTUAL BACKGROUND

Though the parties dispute certain ultimate issues of fact and law, the factual background involving the wrongful eviction claim at issue is essentially undisputed. Plaintiffs Jeffrey T. Brown and Cheryl R. Brown are husband and wife. Mr. Brown

is a citizen of Missouri; Mrs. Brown of Illinois. Defendant State Central Bank is an Iowa banking corporation with its principal place of business in Keokuk, Iowa. The Browns had done business with the bank for over ten years prior to the commencement of this action.

On December 1, 2001, Mr. Brown entered into a written business property lease agreement with the bank for a 2.612 acre tract of real property located in Keokuk, Lee County, Iowa. Mr. Brown planned to use the property in his recycling business. The term of the lease was month-to-month. One of the terms of the lease provided that Mr. Brown would clean up the property by March 1, 2002. (Def.App. at 7–8).

On July 3, 2002 the bank leased the property to George White and Albert Gatton. (Def.App. at 11–15). By a July 9, 2002 letter, the bank terminated the lease agreement with Mr. Brown, effective August 1, 2002, because it had entered into a lease of the property with White and Gatton. The bank suggested Mr. Brown could seek a sublease from the new lessors. (*Id.* at 1–2). Brown subsequently subleased the property from White and Gatton. (Pl. App; Brown Aff. at 1). He made no further lease payments to the bank. (Def.App. at 2). The lease with White and Gatton required the bank's written consent to subletting the leased premises to another. (*Id.* at 11). No sublease between White–Gatton and Brown was provided to the bank and it has no record of consenting to the sublease.

On July 19, 2004 bank Vice President Daniel Logan informed Mr. Brown the bank had terminated its lease with White and Gatton. Mr. Logan gave Mr. Brown until September 1, 2004 to remove his equipment and other property. (Def.App. at 3). Mr. Brown responded he would do the best he could. (*Id.* at 16). By a letter

dated July 21, 2004 Jean D. Winnike, the bank's senior vice president and counsel, wrote Mr. Brown as follows:

> This letter is to confirm the conversation you had with Dan Logan in which you agreed that, because the property you were leasing on South 7th in Keokuk was not cleaned up according to the terms of the lease agreement, you will vacate the property and move everything off of it by September 1, 2004.
>
> If you agree with this letter please sign below and return the original in the enclosed envelope. I have included a copy for your records.

At the bottom of this letter was the following:

> I agree with the terms stated in this letter and agree to vacate the property I have been leasing and move everything off of it by September 1, 2004.

This statement was followed by a space for the date and Mr. Brown's signature. Mr. Brown did not sign or return the letter to defendant. (Pl. Addendum to App.)

Instead, Mr. Brown wrote to Mr. Logan on August 24, 2004 and asked for an extension of the September 1 deadline to September 10, 2004. (Def.App. at 16). He said the contractor who was moving his equipment from the property could not get all of it off the premises until the week after Labor Day, but that they might be out sooner than September 10. (*Id.*) Mr. Brown enclosed a check for $200 to pay for the additional ten days and requested that the locks to the premises not be changed until September 10. (*Id.*)

Mr. Brown's letter was referred to Ms. Winnike, who wrote back on August 30, 2004:

> ... We are returning the check because the lease between you and the bank was terminated some time ago and therefore cannot be extended....

It is my understanding you entered into a verbal agreement that you would be off the property by September 1, 2004. I also understand that you and Dan Logan discussed the fact that you might not be able to have everything off the property by that date. In accordance with those discussions the lock will be changed on the gate on September 1st. If you continue to need access to the property between September 1 and September 10 you may call Dan Logan at 319–524–1021 during regular business hours (Monday through Friday, 8:30 a.m. to 5:00 p.m.) to request access. Dan has stated he will make reasonable arrangements with you to allow you to continue to remove equipment from the property during those hours. After September 10 you will no longer be allowed access to the property.

(Def.App. at 17).

On September 1, 2004 the bank changed the locks on the gates to the property. (Def. Resp. to ¶ 11 of Pl. Stmt. of Facts). Prior to changing the locks, the bank did not commence any legal proceedings to obtain possession of the property.

### III.

### DISCUSSION

The theory of plaintiffs' wrongful eviction claim is straightforward.[1] They contend that after the bank terminated the lease with White and Gatton, Mr. Brown remained in possession of the property as a tenant at will of the bank because he kept possession of the property with the assent of the bank. Iowa Code § 562.4. The bank disputes the element of "assent," but the Court takes it as true for summary judgment purposes that Mr. Brown remained in possession of the property as a

tenant at will. Plaintiffs concede that the bank's letter of July 21, 2004 instructing Mr. Brown to vacate the property by September 1, 2004 was sufficient to terminate the tenancy. Iowa Code § 562.4. Though he was in the process of vacating the property, he had not completely done so by September 1 and had he remained in possession would have been a holdover tenant subject to eviction under Iowa's forcible entry and detainer ("FED") statute. Iowa Code § 648.1(2). While plaintiffs recognize the FED procedure was not the exclusive statutory remedy available to the bank to evict Mr. Brown, *see* Iowa Code § 648.17, they assert the Iowa Supreme Court's interpretation of the FED statute required the bank to use judicial process to evict Mr. Brown, rather than self-help in the form of changing the locks on the gates.

The bank responds that Iowa law does not preclude self-help eviction after a tenant holds over, any rights Brown had to the property were terminated by the July 21 notice, and material issues of fact preclude summary judgment in plaintiffs' favor, indeed the bank is entitled to summary judgment as a matter of law.

■ At the outset, it is not clear that the conduct complained of in Count III amounts to the tort of "wrongful eviction" under Iowa law. "The tort of wrongful eviction requires a 'nontrespassory invasion of another's interest in the private use and enjoyment of land.'" *Continental Ins. Co. v. Bones*, 596 N.W.2d 552, 560 (Iowa 1999)(quoting *Barkett v. Brucato*, 122 Cal. App.2d 264, 275, 264 P.2d 978, 986 (1953), in turn quoting Restatement of Torts § 822 (1939)). The plaintiff in such an action must have "property rights and privileges in respect to the use or enjoyment interfered with." *Barkett*, 122 Cal.

---

**1.** Though Count III is brought in the name of both plaintiffs, there is no evidence Mrs. Brown was ever a tenant of the bank or in possession of the property.

App.2d at 275, 264 P.2d at 986. The tenancy at will having been terminated Brown had no further interest in the use and enjoyment of the property. Put another way, there is no question the bank could evict Mr. Brown from the property, the complaint is about the means employed.

Plaintiffs' argument is based on the Iowa Supreme Court's opinion in *Capital Fund 85 Ltd. Partnership v. Priority Systems, LLC,* 670 N.W.2d 154 (Iowa 2003). The court there held that an FED action was not the proper means by which the owner of an apartment building could obtain the removal of a small repeater satellite dish from the building. *Id.* at 156, 160. In doing so, the court discussed the history and purpose of the FED statute for which it drew on a U.S. Supreme Court case and familiar legal encyclopedias. It observed that such statutes " 'obviate[d] resort to self-help and violence' " by providing "a peaceful legal process" to obtain the repossession of property. *Id.* at 159 (quoting *Lindsey v. Normet,* 405 U.S. 56, 71, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972)). FED statutes were designed to prevent disturbances and to " 'forbid any person righting himself by his own hand and violence.' " *Id.* (quoting 36A C.J.S. Forcible Entry and Detainer § 3 at 962 (1961)).

> Statutes providing a cause of action for forcible entry and unlawful detainer are enacted to enable the parties to obtain a speedy determination of the right to the possession of property without having to resort to violence, to preserve the peace, and require instead the use of judicial process to gain possession.

*Id.* (quoting 35 Am.Jur.2d *Forcible Entry and Detainer* § 7 at 1041 (2001)). Plaintiffs contend *Capital Fund's* discussion of the purpose of FED statutes indicates Iowa's statute should be interpreted to require a real property lessor to use judicial process to obtain possession from a

lessee or tenant no longer entitled to possession, to forbid self-help, and to make a violation of this duty actionable.

The Iowa Supreme Court did not hold in *Capital Fund* that the FED statute requires judicial process and forbids all forms of self-help to regain property. That was not the issue in *Capital Fund,* and had it been the court might have referred to another passage in one of the quoted authorities which, while noting the general principles laid out in *Capital Fund,* added a qualification:

> ... [A]lthough a person who is entitled to the possession of land but who is not in possession may not forcibly take his possession from another, he or she may make a peaceable entry upon the land and resort to such peaceful means as will render impractical the further occupation of land by the other person.

35 Am.Jur.2d *Forcible Entry and Detainer* § 9 at 1043 (2001).

■ The difficulty with plaintiffs' wrongful eviction claim is that nothing in Iowa's FED statute reveals a legislative intent to create a duty to employ judicial process as the sole means for a lessor of real property to obtain possession from a person whose right to possess the premises has expired, or to create a cause of action for the breach of any such duty. While the historical purpose of FED statutes was to avoid breaches of the peace which might occur with efforts to forcibly repossess real property by requiring resort to judicial process, that is not what Iowa's FED statute says. It merely "allow[s]" the summary FED action as an expressly nonexclusive remedy, and by its terms does no more than outline the procedure for securing the summary remedy afforded. Iowa Code §§ 648.1, 648.17.

■ As the Iowa Court of Appeals has observed Iowa's "forcible entry and detain-

er law, unlike landlord-tenant law, does not provide a cause of action to a party who claims to have been wrongfully ousted in contravention of the statutory procedures." *Crawley v. Price*, 692 N.W.2d 44, 49 (Iowa App.2004). Iowa's Uniform Residential Landlord and Tenant Law limits the means by which the landlord of a dwelling unit may recover possession from a tenant, including specifically a holdover tenant, to an action for possession, see Iowa Code §§ 562A.14, .33, .34(3), and gives a tenant a remedy for a landlord's "unlawful ouster," *id.* 562A.26, but the parties have identified no counterpart in the Iowa Code with respect to business property.

There is a paucity of relevant Iowa case law and the language of the FED statute is no help in divining legislative intent. The Court is reluctant to go too far down an uncharted path in Iowa law. For the purposes of the pending summary judgment motion the Court assumes the *Capital Fund* opinion signals Iowa's departure from the old English common law rule permitting reasonable force without legal process to repossess property (if indeed that ever was the law in Iowa), that consistent with its purpose as identified by the Iowa Supreme Court the FED statute implicitly prohibits the extra-judicial forcible eviction of persons to whom it applies, and that a lessor who violates this prohibition is liable to the person dispossessed for actual injury or damage to person or property. On the other hand, outside the realm of residential landlord-tenant law the Court can find no basis in Iowa law to conclude it is *per se* unlawful and actionable for the lessor of real property to employ peaceful kinds of what might be referred to as "self-help" to repossess property where there is no dispute about the lessor's entitlement to possession and the circumstances do not implicate a risk of breach of peace. In this regard the Court is drawn to the holding of the Minnesota Supreme Court in *Berg v. Wiley*, 264 N.W.2d 145 (Minn.1978) with respect to written leases, a holding which focused the inquiry on whether the lessor's right to possession is contested:

> ... [W]e hold ... the only lawful means to dispossess a tenant who has not abandoned nor voluntarily surrendered but who claims possession adversely to a landlord's claim of breach of a written lease is by resort to judicial process.

*Id.* at 151.

In this case it is undisputed the bank terminated the tenancy at will upon proper notice, Mr. Brown agreed to voluntarily surrender the property and was in the process of doing so at the time the locks on the gates were changed. Mr. Brown did not claim possession adversely to the bank, indeed the bank's right to possession of the property was undisputed. The bank gave notice of its intent to take possession on September 1, 2004 and Mr. Brown knew it would do so by changing the locks. The only issue between Mr. Brown and the bank was the removal of Mr. Brown's equipment. Mr. Brown was not able to remove all of the equipment prior to September 1 and requested that the bank allow him until September 10 before the bank changed the locks. The bank responded to Mr. Brown's request for additional time by stating, in substance, it would take possession on the September 1 date as the bank's representatives had discussed with Mr. Brown, but would permit Mr. Brown access to the property until September 10 to permit the removal of his equipment. While the surreptitious entry and lock-out of a tenant asserting a right to possession while the tenant is temporarily absent is a forcible eviction because of the risk of a breach of the peace if the tenant happens to return while the lock is being changed, *Berg*, 264 N.W.2d at 150, in the context here where

Mr. Brown was aware of what the bank was going to do and was prepared to surrender the property, the changing of the locks was a permissible peaceful means for the bank to take possession of the property. As a matter of law the bank's conduct did not give rise to an implied cause of action derived from Iowa's FED statute.

## IV.

## RULING AND ORDER

From the foregoing it follows that plaintiffs' motion for summary judgment [14] on Count III of the complaint should be **denied** and that of defendant [25] **granted**. Count III of plaintiffs' complaint is dismissed.

IT IS SO ORDERED.